Benjamin W. KITCHEN et al.,
Petitioners

v.

FEDERAL COMMUNICATIONS COM-
MISSION and United States of
America, Respondents

The Bell Telephone Company of Penn-
sylvania, Intervenor.

No. 71–1875.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 23, 1972.

Decided June 12, 1972.

Messrs. Alan L. Spielman and David J. Ackerman, Philadelphia, Pa., for petitioners.

Mr. Charles A. Zielinski, Counsel, F. C. C. with whom Messrs. John W. Pettit, Gen. Counsel, and Joseph A. Marino, Associate Gen. Counsel, F. C. C., and Howard E. Shapiro, Atty., Dept. of Justice, were on the brief, for respondents. Mr. Richard E. Wiley, Gen. Counsel of the F. C. C. at the time the brief was filed, and Mr. Edward J. Kuhlmann, Counsel, F. C. C., also entered appearances for respondents.

Mr. Hugh B. Cox, Washington, D. C., with whom Messrs. E. Edward Bruce, Washington, D. C., and John B. King, Philadelphia, Pa., were on the brief, for intervenor.

Before WRIGHT, TAMM and ROBB, Circuit Judges.

PER CURIAM:

In these review proceedings petitioners invite this court to overturn the Federal Communications Commission's long-standing and uniform construction of the Communications Act of 1934[1] as not requiring FCC certification for construction of a telephone building that will be used to house toll and exchange switching equipment to service local area residents. We decline the invitation.

Petitioners, residents' associations and individual residents of the Schuykill area of Philadelphia, Pennsylvania, filed a complaint before the Commission against the Bell Telephone Company of Pennsylvania, intervenor here, alleging that the company, by commencing construction of a telephone exchange building in their neighborhood without prior

1. 47 U.S.C. §§ 151–609 (1970).

Commission authorization, has violated the Communications Act and the National Environmental Policy Act of 1969 (NEPA).[2] They requested the Commission to order the company to stop construction of the facility.

Petitioners contended that the proposed building will be located in a residential neighborhood where it will cause serious harm to a proposed Schuylkill River Park, tend to destroy the surrounding community, and constitute an irrational and destructive use of the natural environment. Petitioners also contended that the building and affiliated circuitry are part of a "line" within the meaning of Section 214(a) [3] of the Communications Act, thereby bringing the facility within the jurisdiction of the Commission and thus requiring prior Commission approval before construction and operation. Petitioners argued that an application for such authority, if filed, would have been denied by the Commission because of the facility's alleged significant and adverse impact on the environment, an impact which, under NEPA, the Commission must consider before granting any Section 214 certificate.

Before the Commission the company filed a motion to dismiss petitioners' complaint, arguing that a telephone exchange building is not a "line" within the definition of "line" in Section 214(a), that the location of such a building involves questions of zoning and land use which are matters subject to regulation by local governmental authorities, that all of the appropriate local governmental authorities have asserted jurisdiction over construction of its facility on its present location, and that consequently, under Section 221(b)[4] as well as Section 214(a), the Commission is without jurisdiction over this telephone exchange building. The company noted that NEPA does not purport to confer jurisdiction upon the Commission or any federal agency except as a supplement to existing authority, and that petitioners here have filed similar proceedings before the Pennsylvania Public Utility Commission (PUC) alleging environmental pollution arising as a result of construction of the facility. The Pennsylvania PUC, after denying the company's motion to dismiss those proceedings, has held extensive hearings on petitioners' environmental allegations, has completed its record, and has set the case for briefing and argument by the parties.

In granting the company's motion to dismiss these proceedings, the Commission stated that any consideration of NEPA "must, in the first instance, be founded on our primary jurisdiction under the Communications Act over the communications facility proposed by [the company]." The Commission further held that "[i]nsofar as section 214 of the Communications Act is concerned,

2. 42 U.S.C. § 4321 et seq. (1970).

3. 47 U.S.C. § 214(a). This section provides in pertinent part:

"No carrier shall undertake the construction of a new line * * * unless and until there shall first have been obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the construction, or operation, or construction and operation, of such additional or extended line * *. * * * As used in this section the term 'line' means any channel of communication established by the use of appropriate equipment, other than a channel of communication established by the interconnection of two or more existing channels * * *. * * * *"

4. 47 U.S.C. § 221(b). This section provides in pertinent part:

"Subject to the provisions of section 301 of this title, nothing in this chapter shall be construed to apply, or to give the Commission jurisdiction, with respect to * * * facilities * * * for or in connection with * * * telephone exchange service * * *, even though a portion of such exchange service constitutes interstate or foreign communication, in any case where such matters are subject to regulation by a State commission or by local governmental authority."

we have not heretofore asserted or found that we could assert jurisdiction to require prior approval for construction of what is essentially a local exchange building \* \* \* . \* \* \* Nothing in the pleadings before us nor in the legislative history of the Communications Act or the National Environmental Policy Act persuades us that we should intervene to consider the questions that are the substance of the subject complaint and disturb their resolution by appropriate local agencies."

■ We find ourselves in agreement with the position taken by the Commission in this case. Since passage of the Communications Act in 1934 the Commission has never sought to exercise jurisdiction over telephone exchange buildings. Even if such buildings could be considered part of a "line" within the meaning of Section 214(a),[5] an exercise of jurisdiction would still be precluded by Section 221(b).[6] That section denies jurisdiction to the Commission "with respect to \* \* \* facilities \* \* \* for or in connection with \* \* \* telephone exchange service \* \* \*, even though a portion of such exchange service constitutes interstate or foreign communication," where such facilities "are subject to regulation by a State commission or by local governmental authority." Since the Pennsylvania PUC is actively considering the very issues brought by these petitioners before us today, it seems rather clear that Section 221(b) excludes this local toll and exchange building from the jurisdiction of the Commission.[7]

Affirmed.

---

5. Section 214(a) excludes from the definition of a line "a channel of communication established by the interconnection of two or more existing channels." The Act's legislative history indicates that this provision was inserted to prevent the FCC from asserting jurisdiction over switching equipment, while permitting it to continue regulation of carrier equipment. See 89 Cong.Rec. 1093 (1943) (remarks of Senator McFarland). It should be noted that the telephone building in question is designed primarily, although not exclusively, for housing switching equipment. See also Hearings on H.R. 8301 before the House Committee on Interstate and Foreign Commerce, 73d Cong., 2d Sess., 170–171 (1934); Hearings on S. 2910 before the Senate Committee on Interstate Commerce, 73d Cong., 2d Sess., 89–90 (1934) (hereinafter "1934 Senate Hearings"); Hearings on S. 2598 before a Subcommittee of the House Committee on Interstate and Foreign Commerce, 77th Cong., 2d Sess., 39–40, 42, 73, 82–83, 183–184 (1942).

6. The legislative history of § 221(b) supports this interpretation of the statute. See 1934 Senate Hearings at 96 (remarks of Senator Dill); S.Rep.No.781, Committee on Interstate Commerce, 73d Cong., 2d Sess., 5 (1934); H.R.Rep.No. 1850, Committee on Interstate and Foreign Commerce, 73d Cong., 2d Sess., 7 (1934); 78 Cong.Rec. 8823 (1934) (remarks of Senator Dill); 78 Cong.Rec. 10314 (1934) (remarks of Congressman Rayburn, then chairman of the House Committee on Interstate and Foreign Commerce).

7. Petitioners also allege that intervenor intends to use the building to house microwave equipment and that the Commission therefore should have asserted jurisdiction under § 319 of the Act, 47 U.S.C. § 319. However, intervenor flatly denied before the Commission that it had any plans to install microwave equipment, and in light of petitioners' failure to plead any additional facts supporting their naked allegation, the Commission acted within its lawful discretion when it dismissed this portion of the complaint.