**McDONNELL DOUGLAS CORPORATION,
Plaintiff-Appellant**

v.

**GENERAL TELEPHONE COMPANY OF CALIFORNIA and General Telephone and Electronics Corporation, Defendants-Appellees.**

No. 75–3131.

United States Court of Appeals, Ninth Circuit.

Jan. 2, 1979.

Rehearing and Rehearing En Banc Denied April 25, 1979.

James J. Foley, Huntington Beach, Cal., for plaintiff-appellant.

John H. Zuromskis, Los Angeles, Cal., for defendant-appellee.

Before CARTER and HUFSTEDLER, Circuit Judges, and C. WILLIAM KRAFT, Jr.,* District Judge.

JAMES M. CARTER, Circuit Judge:

McDonnell Douglas appeals here from an order granting General Telephone's[1] motion for summary judgment in a suit in which McDonnell sought to recover excise taxes paid over a five and one-half year period on telephone services provided by General Telephone. The thrust of the district court's order was that McDonnell had failed to state any cause of action under applicable federal statutory or common law.

McDonnell's appeal presses the view that at least three causes of action were stated: First, General Telephone's collection of excise taxes between 1966 and 1971 violated a duty imposed on General Telephone by the Federal Excise Tax Reduction Act of 1965, 26 U.S.C. §§ 4251–4254 ("the 1965 Act") to conduct its billing practice so as to confer the benefits of the Act on its customers, including McDonnell. Second, General Tel-

---

* Honorable C. William Kraft, Jr., Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

1. Although both General Telephone Company of California and General Telephone and Elec-

tronics Corporation were defendants below and are appellees here, our action affects both in the same way, and they will therefore be referred to under the collective term of "General Telephone".

ephone's billing practice was discriminatory as to McDonnell and thus violated the anti-discrimination provisions of the Federal Communications Act of 1934, 47 U.S.C. § 202 as amended ("the 1934 Act"). Finally, McDonnell argues that General Telephone violated a fiduciary duty owed to its customers, including McDonnell, when it established and carried out the particular billing practices which resulted in McDonnell's having to pay the disputed excise taxes.

General Telephone argues in support of the district court that no cause of action was stated, and also contends that, as to the claim based on discrimination arising out of the 1934 Act, a statute of limitations would preclude recovery anyway. It also argues that it is not a proper party from whom McDonnell should seek a refund of taxes. Rather, section 7422(f)(1) of the Internal Revenue Code, 26 U.S.C. § 7422(f)(1) requires that such action be brought only against the United States.

We find that McDonnell has failed to state any cause of action under the federal statutes cited and under the common law. We therefore affirm the decision of the lower court.

## I. FACTS

McDonnell is a long-time customer of General Telephone Company of California, a wholly-owned subsidiary of co-appellee General Telephone and Electronics Corp. During the time period relevant to this dispute, McDonnell subscribed to at least two different kinds of telephone service from General Telephone: conventional service which gave McDonnell access to the world-wide commercial telephone communications net available to telecommunications users generally, and a private branch exchange (PBX) system which facilitated McDonnell's internal communications. General Telephone apparently offered PBX systems in different modes, one of which was called "CENTREX" and which was used by McDonnell in its internal communications.

The seeds of this dispute were sown in 1965 when Congress amended the Internal Revenue Code to exempt "private communications service" from federal communications excise taxes. Federal Excise Tax Reduction Act of 1965, 46 U.S.C. §§ 4251–4254. Under these amendments, PBX systems were intended to qualify for the tax exemption, but only if customers were billed separately for internal and external use. See H.R.Rep.No.433, 89th Cong., 1st Sess. 31 (1965), 1965 U.S.Code Cong. & Admin.News pp. 1645, 1677. CENTREX services received by McDonnell were billed together with conventional telephone services and for that reason, they did not immediately qualify for the exemption. The present dispute matured when General Telephone finally separated its CENTREX and conventional charges at McDonnell's request—five and one-half years after the Excise Tax Reduction Act became effective—but declined to reimburse McDonnell for the taxes paid during that period.

## II. ISSUES

A. Does the Excise Tax Reduction Act of 1965 impose a duty upon General Telephone to change its billing practice so as to confer the benefits of the Act on McDonnell?

B. Is General Telephone's billing practice with respect to CENTREX service subject to federal scrutiny so as to give rise to a cause of action under the Federal Communications Act of 1934 where discrimination is alleged? If so, does a statute of limitations bar recovery?

C. Does General Telephone owe a separate common law fiduciary duty to McDonnell to formulate billing policies that would minimize McDonnell's excise taxes?

D. Is General Telephone the proper party from whom McDonnell should seek recovery of the money paid as federal excise taxes?

## III. DISCUSSION

### A. The 1965 Act

Insofar as it applies to the facts of this case, the 1965 Act provides for an excise tax on local telephone service (26 U.S.C.

§ 4251(a)(1)), but excludes from coverage of the tax "private communications services . . . [if] a separate charge is made for such service." 26 U.S.C. § 4252(a), (d). Thus McDonnell's CENTREX service was taxed because it was billed to McDonnell along with charges for conventional service. It is clear that Congress contemplated such a result when it passed the 1965 Act. The legislative history of the bill, found in H.R. Rep.No.433, 89th Cong. 1st Sess. 31 (1965), 1965 U.S.Code Cong. & Admin.News p. 1645 at 1677 states:

> "It is understood that private lines and PBX systems generally will immediately qualify for this exemption. However, it is understood that Centrex systems— where switching equipment is generally on the premises of the local exchange rather than on that of the subscriber— generally do not, as yet, provide for a charge which is separate and distinct from that for local telephone service. Until such separation is made, this exemption, therefore, will not apply in the case of Centrex service."

McDonnell argues that there is implicit in the Act and its legislative history a duty placed upon utilities providing telephone service to separate charges for CENTREX services so that they qualify for the exemption. It supports this argument with the observation that if the Act does not impose such a duty, then it confers upon General Telephone and other utilities excessive discretion to determine whether or not its customers have to pay federal excise taxes. It looks at the words "as yet" and "until" in the text of the legislative history and contends they should be interpreted so as to require a change in a utility's billing practice if the service to which a customer subscribes does not qualify for the exemption.

Essentially identical arguments were made in *DuPont Glore Forgan, Inc. v. Am. Tel. & Tel. Co.*, 437 F.Supp. 1104 at 1131

(S.D.N.Y.1977), *aff'd mem.*, 578 F.2d 1367 (2d Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 465, 58 L.Ed.2d 431 (1978) (No. 78–317). In the portion of that opinion directly applicable to this claim, and with which we generally agree,[2] Judge Edward Weinfeld noted that neither the language of the Act nor the legislative history evidence a clear imposition of a duty to establish separate charges for CENTREX service. Furthermore, making a taxpayer's tax liability dependent upon the actions of one of the parties to a particular taxable transaction is not uncommon under the Internal Revenue Code. It follows, therefore, that General Telephone's discretion to separate or not separate CENTREX charges was absolute under the 1965 Act.

In light of Judge Weinfeld's discussion of this issue in 437 F.Supp. at 1131–34, we find it unnecessary to elaborate or cite further authority. We merely hold, consistent with that decision, that the 1965 Act does not impose a duty upon General Telephone to separate charges for CENTREX services from charges for normal telephone services in its bills to McDonnell.

### B. *The 1934 Act*

■ McDonnell next claims that General Telephone's billing practice violated the anti-discrimination provisions of the 1934 Federal Communications Act, 47 U.S.C. § 202. That section provides as follows:

> "(a) It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage."

---

**2.** A portion of Judge Weinfeld's opinion hints that the plaintiff there had failed to make a valid claim for relief under § 202 of the 1934 Act (47 U.S.C. § 202). 437 F.Supp. at 1131, 1134. It is unclear whether he meant that any action which was not violative of the 1965 Act also met the anti-discrimination provisions of the 1934 Act, or whether plaintiff there merely failed to make the requisite pleadings and proof to persuade the judge of the merits of its claim. We do not rely on that portion of Judge Weinfeld's opinion in our discussion of the 1934 Act.

The discrimination here, McDonnell contends, lies in the fact that its CENTREX costs were higher than fees paid by other customers of General Telephone who received similar service but happen to have subscribed to a P.B.X. system which was billed separately and thus not subject to the excise tax.

General Telephone counters with the argument that CENTREX service, being entirely intrastate in nature, is exempt from the coverage of the Act under section 152(b) of the Act, which excludes "charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communication service by wire or radio of any carrier[.]" This provision was clearly intended to give states significant power to regulate wire communications that are wholly intrastate in nature. In the debates which preceded passage of the 1934 Act, Senator Dill, the Senate manager of the bill, stated, apparently with reference to § 152:

> "We have attempted . . . to reserve to the State commissions the control of intrastate telephone traffic [in contrast to the jurisdiction left to the states over intrastate commerce following *Houston, E. & W.T. Ry. v. United States,* 234 U.S. 342 [34 S.Ct. 833, 58 L.Ed. 1341] (1914).] . . .
>
> "We have attempted, in this proposed legislation, to safeguard State regulation by certain provisions to the effect that where existing intrastate telephone business is being regulated by a State commission, the provisions of the bill shall not apply. . . ." 78 Cong.Rec. 8823 (1934).

Subsequent decisions interpreting the Act have sought to preserve state control against federal jurisdictional encroachment. *See Kitchen v. F. C. C.,* 150 U.S.App.D.C. 292, 464 F.2d 801 (1972); *Ivy Broadcasting Co. v. American Tel. & Tel. Co.,* 391 F.2d 486, 494, n. 6 (2d Cir. 1968); *United States v. State Corporation Comm'n,* 345 F.Supp. 843 (E.D.Va.1972), *aff'd* 409 U.S. 1094, 93 S.Ct. 912, 34 L.Ed.2d 682 (1973).

We do not wish to unnecessarily expand the scope of federal jurisdiction in this area when it was the clear intent of Congress and other courts to limit that jurisdiction.

Counsel for McDonnell has forcefully and ably argued that what is involved here is not simply intrastate services as to which the California Public Utilities Commission has exclusive jurisdiction in the first instance, but rather the discriminatory manner in which General Telephone carried out its congressionally mandated duties as a collector of federal excise taxes on those intrastate services. This, it is contended, places what might otherwise be services excluded from the coverage of the 1934 Act under § 152 of that Act back under its coverage because of the federal interest and involvement in the collection of the excise taxes. We find the argument tempting but unpersuasive.

Comparing the language of sections 202 and 152, we note that the language which defines the scope of coverage of the two sections is virtually identical. Section 202 prohibits discrimination in "charges, practices, classifications, regulations, facilities, or services for or in connection with like communications services", and section 152 excludes from coverage of the Act all "charges, classifications, practices, services, facilities, or regulations for or in connection with intrastate communications services". If, as McDonnell contends, General Telephone's tax collection practices were in violation of § 202 because they constituted "charges, practices, . . . regulations, . . . or services" relating to communications, then it would be inconsistent to argue that those same tax collection practices are not "charges, . . . practices, services, . . . or regulations" relating to intrastate communications services, because CENTREX was almost certainly solely intrastate.[3]

We hold, therefore, that McDonnell has stated no valid claim for damages based on

---

3. We are also unpersuaded by McDonnell's contention that CENTREX is not intrastate service because of the capacity it possesses to be patched into interstate telecommunications nets. Aside from the apparent fact that none of the disputed charges here were for calls

discrimination under the 1934 Act. In light of this holding, it is unnecessary to consider the effect of the statute of limitations found in 47 U.S.C. § 415(b), which General Telephone claims precludes recovery.

### C. *Fiduciary Duty*

 McDonnell's third claim is based on the theory that General Telephone's position as a public utility and as the author of the billing practices in question gives rise to fiduciary duties owed to its customers which it breached by collecting unnecessary excise taxes from McDonnell for five and one-half years.

McDonnell cites no case authority for the proposition that a public utility such as General Telephone owes a special fiduciary duty to customers from whom it collects taxes on behalf of the government. There are, however, cases which stand for the proposition that no such fiduciary relationship exists. *Agron v. Illinois Bell Telephone Co.*, 325 F.Supp. 487 (N.D.Ill.1970), *rev'd on other grounds*, 449 F.2d 906 (7th Cir. 1971), *cert. denied*, 405 U.S. 954, 92 S.Ct. 1171, 31 L.Ed.2d 231 (1972); *Jacob Goodman & Co. v. New York Telephone Co.*, 285 App.Div. 404, 137 N.Y.S.2d 797 (1st Dep't), *aff'd*, 309 N.Y. 258, 128 N.E.2d 406 (1955).

McDonnell derives most of the force of its argument from its interpretation of the Federal Excise Tax Reduction Act of 1965 and from the Federal Communications Act of 1934, discussed above. We see no reason to bootstrap from those two statutes and create a third cause of action in addition to the two already alleged. We therefore af-

firm that part of the lower court's order dealing with a claim for relief based on an alleged fiduciary duty owed by General Telephone to McDonnell.

### IV. *CONCLUSION*

The order of the lower court is affirmed in all respects. It is therefore unnecessary to deal with General Telephone's contention that it is not the proper party from whom to seek the return of overpaid excise taxes.

---

made from CENTREX phones into interstate nets, the theory which McDonnell tries to develop is inconsistent with the intent of Congress to preserve some state jurisdiction over telecommunications services. If CENTREX service of the type described here becomes interstate merely because it can be connected with other wire systems that are interstate, then it is difficult to imagine what type of telephone service would not qualify as interstate in a similar manner. The lessons of *Kitchen* and *State Corporation Comm'n, supra*, suggest McDonnell's argument should be discarded, and we do so in light of the facts presented here.

We are likewise unpersuaded by McDonnell's argument that, because General Telephone was declared to be an interstate common carrier in *General Telephone Co. of California v. F. C. C.*, 134 U.S.App.D.C. 116, 413 F.2d 390 (D.C.Cir.), *cert. denied*, 396 U.S. 888, 90 S.Ct. 173, 24 L.Ed.2d 163 (1969), the antidiscrimination provisions of § 202 of the Act apply here. This misses the point. A carrier may be an interstate "common carrier" within the meaning of § 202 in some instances but not in others, depending on the nature of the activity which is subject to scrutiny. Otherwise, § 152 has little meaning. *See National Ass'n of Reg. Util. Com'rs v. F. C. C.*, 174 U.S.App.D.C. 374, 533 F.2d 601 (1976).