**AIR TRANSPORT ASSOCIATION OF AMERICA, et al.,
Plaintiffs–Appellees,**

**v.**

**PUBLIC UTILITIES COMMISSION OF the STATE OF CALIFORNIA, et al.,
Defendants–Appellants.**

**Nos. 86–2885, 86–2906.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 13, 1987.

Decided Nov. 30, 1987.

Gilmore F. Diekmann, Jr. and Roxanne L. Holmes, San Francisco, Cal., for plaintiffs-appellees.

Janice E. Kerr, J. Calvin Simpson, and Peter G. Fairchild, San Francisco, Cal., for defendants-appellants.

Before SCHROEDER, POOLE and KOZINSKI, Circuit Judges.

SCHROEDER, Circuit Judge:

This case concerns a regulation promulgated by the California Public Utilities Commission. The regulation effectively prohibits telephone customers in California from surreptitiously overhearing or recording conversations without notice to the parties to the conversation. The Commission and its Commissioners (CPUC) appeal the grant of summary judgment and declaratory relief in favor of the Air Transport Association of America and 13 airlines (ATA), and the issuance of an injunction prohibiting the CPUC from causing the termination of the airlines' telephone service or otherwise enforcing CPUC General Order 107–B (G.O. 107–B) against them.

The principal issues which we must decide in reviewing the district court's judgment are, first, whether the district court erred in holding that the CPUC lacked jurisdiction, as a matter of state law, to issue the regulation and, second, whether the district court erred in holding that G.O. 107–B violated section 202(a) of the Federal Communications Act, 47 U.S.C. § 202(a), on the ground that the regulation requires discontinuance of the airlines' telephone service in an unreasonably discriminatory manner. As additional support for the result below, the ATA argues that relief is justified by general preemption of the field by both the Federal Aviation Act and the Federal Communications Act. We hold that the district court's judgment must be reversed, because we conclude that the airlines have not established any basis for the

federal courts to interfere in the operation of the state regulation.

## BACKGROUND

In December 1981, the CPUC initiated a rule-making proceeding to determine whether the CPUC should adopt regulations concerning monitoring of telephone conversations by telephone customers who own their equipment. Over 71 organizations that might be interested were notified and invited to make comments on the issue. The Air Transport Association of America (ATA) participated on behalf of the airlines. After considering all comments, and denying petitions for rehearing filed by ATA, Pacific Telephone and Telegraph Company, and General Telephone Company of California, the CPUC adopted G.O. 107–B in its present form.

G.O. 107–B defines disapproved monitoring of telephone calls as the use of equipment which allows a third person to overhear or record a telephone conversation without any indication to the conversant parties that they are being overheard, or without allowing the conversant parties to communicate with the third person. A person wishing to listen in on a conversation without violating the regulation can provide notice by using a beep-tone warning device audible to all parties to the conversation or by announcing to the parties that the conversation is being monitored. The order requires utilities to file tariffs prohibiting monitoring unless notice is given to the parties to the conversation, or their consent is obtained. If a telephone company learns that a customer is monitoring conversations in violation of the tariff, the order requires the utility to discontinue service if the customer does not refrain from such monitoring within five days after notice from the utilities. The customer can file a complaint with the CPUC if discontinuance is threatened, and the customer's service will not be discontinued pending resolution of the complaint.

Rather than appealing the order adopting G.O. 107–B to the California Supreme Court, as provided by Cal.Pub.Util.Code § 1756, the ATA and 13 airlines filed this suit in federal district court. According to the complaint, all but one of the airlines has a telephone reservations facility in California equipped with privately owned automatic call distribution equipment. This equipment receives calls from both within and without California. However, the equipment distributes incoming calls to reservation centers throughout the United States on the basis of reservation agent availability without regard to the place of origin of the customer's call. Thus, calls from California may be routed to reservation agents within or without California, and calls from outside California may be routed to reservations agents within or without California. Thus, the regulation reaches beyond the borders of California, and this is not disputed.

The reason that the airlines monitor conversations between their reservations agents and members of the general public is allegedly to assure that the agents give information accurately, efficiently, and courteously.

In their complaint, they sought relief on the grounds that the CPUC has exceeded its jurisdiction under California law in adopting G.O. 107–B, that G.O. 107–B violates 47 U.S.C. § 202(a) in that it requires discontinuance of service in an unreasonably discriminatory manner, and that G.O. 107–B is preempted by both the Federal Communications Act, 47 U.S.C. § 151, *et seq.*, and the Federal Aviation Act, as amended by the Airline Deregulation Act of 1978, 49 U.S.C. § 1305.[1] Named as defendants were the CPUC and its Commissioners, Pacific Telephone and Telegraph Company, and General Telephone Company of California. The complaint sought declaratory relief and an injunction prohibiting enforcement of G.O. 107–B.

---

1. The complaint also sought relief on the grounds that G.O. 107–B violated the Commerce clause, U.S. Const., art. I, § 8, cl. 3, the fourteenth amendment, and the permanent injunction affirmed by this court in *Hughes Air Corp.* *v. Public Util. Comm.*, 644 F.2d 1334 (9th Cir. 1981). The ATA does not press these theories on this appeal, and has apparently abandoned them.

Shortly after the parties had filed cross-motions for summary judgment, the district court allowed the Federal Communications Commission (FCC) to file an amicus memorandum. Concerned that G.O. 107–B's interstate reach might affect matters within its jurisdiction, the FCC requested the court to stay proceedings and refer the parties to the FCC for consideration of the Federal Communications Act preemption claim. The district court stayed proceedings. ATA then filed a petition with the FCC for a declaratory ruling and expedited relief. This was eventually denied. *In re Petition of Aeronautical Radio, Inc. & Air Transport Association of America,* 102 FCC2d 1 (1985) (*ATA Petition*). In denying this petition, as well as ATA's subsequent petition for reconsideration,[2] the FCC determined that Congress had given the states authority to provide measures to protect the privacy of telephone conversations, that G.O. 107–B did not bar or restrict subscriber interconnection with the public switched network, that G.O. 107–B did not substantially affect the conduct of an efficient, nationwide telecommunications network, that G.O. 107–B would not have a significant impact on federal interconnection rights, and that access to the interstate network would not unreasonably be denied by G.O. 107–B. ATA did not appeal these determinations.

After the FCC ruling, the district court lifted the stay of the action. It then granted summary judgment in favor of the CPUC on all of ATA's federal law claims except the 47 U.S.C. § 202(a) claim. The district court dismissed ATA's section 202(a) claim without prejudice because of its belief that whether the regulation constituted unreasonable discrimination in violation of that section involved a question of state law. It similarly dismissed without prejudice ATA's claim that the CPUC had exceeded its jurisdiction under state law.

ATA then filed an application for leave to file an out-of-time petition for a writ of certiorari in the California Supreme Court to obtain review of its state law claims.

The California Supreme Court denied the application for leave without opinion or comment.

ATA then moved the district court to reconsider its order dismissing the section 202(a) and state law jurisdictional claim on the ground that ATA no longer had a forum in which to litigate these claims. The district court construed the motion as one under Fed.R.Civ.P. 60(b)(6) and relieved the ATA from the prior judgment.

The district court then ruled that the CPUC had exceeded its jurisdiction in adopting G.O. 107–B and that G.O. 107–B constituted "unreasonable discrimination" under 47 U.S.C. § 202(a). It granted ATA summary judgment, declaratory relief and an injunction prohibiting the telephone companies, the CPUC, and the Commissioners from enforcing G.O. 107–B or "terminating, threatening to terminate, or causing other parties to terminate the telephone service of the plaintiff airlines because of their supervisory monitoring practices." It is from that ruling that the CPUC appeals.

## DISCUSSION

### A. *Eleventh Amendment*

We first consider the district court's holding that the CPUC acted in excess of its state statutory jurisdiction in promulgating G.O. 107–B. CPUC correctly contends that we must hold that the eleventh amendment prohibits the district court from exercising jurisdiction over ATA's claim that the Commission acted in excess of its state statutory jurisdiction in promulgating G.O. 107–B.

■ The eleventh amendment, by its terms, prohibits suits brought against a state by a citizen of another state. The Supreme Court has held that the amendment also prohibits suits against a state by citizens of the state sued. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). The eleventh amendment does not bar suits against a state official for federal

2. *Memorandum Opinion and Order,* FCC No. 86–123 (released March 28, 1986). This opinion and order was not published.

constitutional or statutory violations in some situations. *See Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). However, the amendment bars claims in federal court against state officials based on state law violations. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106, 121, 104 S.Ct. 900, 911, 919, 79 L.Ed.2d 67 (1984).

◼ ATA argues that the CPUC and the Commissioners acted beyond their jurisdiction and that this characterization distinguishes this from other suits against state officials. We perceive no meaningful distinction. Here, as in *Pennhurst*, defendants were acting in good faith and *"within the sphere of their official responsibilities." Pennhurst*, 465 U.S. at 107, 104 S.Ct. at 911 (*quoting Halderman v. Pennhurst State School & Hospital*, 446 F.Supp. 1295, 1324 (E.D.Pa.1978)) (emphasis added by Supreme Court opinion). The essence of their claim is that the state officials violated state law in promulgating G.O. 107–B and will violate state law if they attempt to enforce it. This is thus a claim barred by the eleventh amendment. *Id.*

## B. *Federal Communications Act*

We next turn to the district court's holding that the regulation violates the anti-discrimination provision of the Federal Communications Act, 47 U.S.C. § 202(a). That section provides:

> It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.

◼ The district court determined that the type of monitoring proscribed by G.O. 107–B did not violate any statutory provisions of federal or California law.[3] The district court then held that because G.O. 107–B purported to regulate otherwise lawful conduct, it violated section 202(a). It thus interpreted section 202(a) as prohibiting, per se, a state regulatory agency from regulating practices which have not been legislatively declared criminal. We are unpersuaded by ATA's arguments that this is a proper interpretation of section 202(a).

◼ ATA has not pointed out, and we cannot discern, anything in the Federal Communications Act, the language of section 202(a), or the legislative history, to support its interpretation. The Communications Act establishes, by its terms, a dual system of state and federal regulation over telephone service. *Louisiana Public Service Commission v. FCC*, 476 U.S. 355, 360, 106 S.Ct. 1890, 1894, 90 L.Ed.2d 369 (1986); *California v. FCC*, 798 F.2d 1515, 1517 (D.C.Cir.1986); *see* 47 U.S.C. §§ 152, 221, 301, 605(e). The Act is concerned with regulating interstate and foreign commerce in and by wire communication to make available worldwide communication services at reasonable charges and to protect the safety of life and property through the use of wire and radio communication. 47 U.S. C. § 151. However, like other statutes prohibiting discrimination in commerce with respect to prices or charges, such as section 2 of the Robinson–Patman Act, 15 U.S.C. § 13, Congress' primary concern in enacting 47 U.S.C. § 202(a) was with economic discrimination, not the complete regulation of an industry for the health and safety of the general public. Congress certainly did not intend section 202(a) to prohibit state regulation of intrastate utilities to protect public health, safety and welfare. *Cf. McDonnell Douglas Corp. v. GTE*, 594 F.2d 720, 723–24 (9th Cir.), *cert. denied*, 444 U.S. 839, 100 S.Ct. 77, 62 L.Ed.2d 50 (1979) (where state regulates intrastate communications practices within meaning of section 152(b), section 202(a)

---

**3.** The district court considered whether ATA's monitoring practices violated 18 U.S.C. §§ 2510–2520, or Cal.Penal Code §§ 631, 632.

inapplicable); *Diamond Int'l Corp. v. FCC*, 627 F.2d 489, 493 n. 7 (D.C.Cir.1980) (per curiam) (utility's rates for modification of Private Branch Exchange equipment subject to state regulation and not violative of section 202(a)). Moreover, 47 U.S.C. § 605, which affords some federal protection for a telephone user's privacy, provides in subsection (e) that "[n]othing in this section shall affect any right, obligation, or liability under ... any ... applicable ... State or local law." This provision, like section 202(a), does not limit state regulation to criminal statutes.[4]

The only case cited by ATA to support its proposed interpretation is *Palermo v. Bell Tel. Co.*, 415 F.2d 298 (3d Cir.1969). This case, however, holds only that disconnection for legislatively declared criminal conduct is not unreasonably discriminatory under the statute. It does not hold that criminal conduct is a prerequisite for non-discriminatory regulation. In *Palermo*, the telephone company had cut off the Palermos' telephone service at the district attorney's request after the district attorney learned that Mr. Palermo was using the telephone to violate state gambling and banking laws. The Palermos filed suit seeking restoration of service by way of injunction, contending that discontinuance without notice or a hearing violated 47 U.S.C. §§ 201 and 202. The Third Circuit affirmed the district court's holding that because the telephone company acted reasonably, there was no claim to relief under sections 201 and 202. *Id.*

Insofar as *Palermo* deals at all with a question of statutory interpretation of section 202, the case, at most, stands for the proposition that discontinuance of service based on criminal conduct is not unreasonable discrimination.[5] However, assuming

arguendo that *Palermo* establishes this proposition, it does not follow as a matter of logic that discontinuance based on less than criminal conduct is unreasonable. Such a theory of section 202(a) is not only unprecedented, but would severely interfere with the ability of a state agency to further legitimate state interests, as authorized by 47 U.S.C. § 605(e). In this case the California regulation was promulgated in furtherance of perceived privacy interests of its citizens. In California, a citizen's interest in privacy has been raised to the dignity of an express state constitutional right. *See* Cal. Const. art. I, § 1. California has seen fit to protect this right with statutes providing criminal sanctions for a violation of one's privacy, as well as a statutory civil cause of action for the person whose rights are violated. *See* Cal.Penal Code §§ 630–637.5. The CPUC has also been directed by the California legislature to play a part in ensuring privacy rights. *See* Cal.Pub.Util.Code §§ 7905–06. ATA's theory would prevent any state regulatory authority from effectuating protections for the interests and rights of its citizens unless there was a specific legislative provision criminalizing violations of those interests or rights.[6]

■ We decline to interpret the Federal Communications Act in a manner which forces states to criminalize all conduct it wishes to regulate through civil enforcement mechanisms. We therefore hold that G.O. 107–B does not require discontinuance of service on an unreasonably discriminatory basis. Our decision in this regard is fully supported by the FCC's decision on ATA's petition for declaratory ruling. The FCC held that G.O. 107–B was unlikely to have a significant impact on customers'

---

4. Similarly, the legislative history of the wiretapping and eavesdropping provisions contained in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, et seq., suggests that states may impose more stringent standards to protect their citizens' privacy but does not suggest that states must make the violation of such standards criminal. *See* S.Rep. No. 1097, 90th Cong., 2d Sess. (1968), *reprinted in* 1968 U.S.Code Cong. & Admin. News, 2112, 2181–87.

5. We find little reason to disagree this proposition, as we intimated as much in *McBride v. Western Union Tel. Co.*, 171 F.2d 1 (9th Cir. 1949).

6. We express no opinion on whether California constitutional and statutory privacy protections extend to the conversations engaged in by airline reservation agents and customers because we are not here deciding issues of state law.

federal interconnection rights, and stated in its order denying ATA's petition for re-hearing that G.O. 107–B is not unreason-able. ATA has not offered any other argu-ments that G.O. 107–B is discriminatory. Because the regulation applies to all, it does not appear discriminatory, and it is certainly not discriminatory on any basis other than a neutral and rational one. *See National Ass'n of Reg. Util. Comm'rs v. F.C.C.*, 737 F.2d 1095, 1133 (D.C.Cir.1984), *cert. denied*, 469 U.S. 1227, 105 S.Ct. 1224, 1225, 84 L.Ed.2d 364 (1985). We see no reason to hold G.O. 107–B invalid.

ATA next contends that even if we reject its section 202(a) argument, the Federal Communications Act still requires that the district court's judgment be affirmed be-cause the Act occupies the entire communi-cations field so as to preempt state regula-tion generally, and G.O. 107–B particularly.

The district court initially referred the parties to the FCC to consider this point while staying proceedings on the rest of ATA's complaint. The FCC explicitly con-sidered and rejected ATA's preemption con-tention, holding that Congress has indi-cated to the states that they may legislate to protect the privacy of telephone conver-sations, and that nothing in the Federal Communications Act preempts state legis-lation in this area. *ATA Petition*, 102 FCC2d at 5, 6. ATA did not appeal the order dismissing its petition. When the district court lifted the stay, it explicitly rejected the preemption argument, essen-tially agreeing with the FCC on this point. ATA now contends that this ruling was in

error, and provides an alternative ground for affirming the district court's judgment.

■ We decline to consider the conten-tion because the district court lacked juris-diction to reconsider the general preemp-tion issue. 28 U.S.C. § 2342 vests exclu-sive jurisdiction in the courts of appeals to review final orders of the FCC and the Federal Maritime Commission, as well as other federal agencies. In *Port of Boston Marine Terminal Ass'n v. Rederiaktiebo-laget Transatlantic*, 400 U.S. 62, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970), the district court stayed proceedings in a dispute con-cerning the shifting of fees for cargo that remained on a wharf beyond five days so that the parties could obtain a ruling from the Federal Maritime Commission. The Su-preme Court upheld the district court's re-fusal to consider the issue once the Com-mission had ruled on it on the ground that 28 U.S.C. § 2342 placed exclusive jurisdic-tion to review the Commission's order in the court of appeals. *Id.* at 69, 91 S.Ct. at 208. The Supreme Court has also held that exclusive jurisdiction to review the FCC's denial of a petition for rulemaking resides in the court of appeals. *See FCC v. ITT World Communication, Inc.*, 466 U.S. 463, 468–69, 104 S.Ct. 1936, 1939–40, 80 L.Ed.2d 480 (1984). Here, once ATA filed a petition for declaratory ruling and obtained an or-der denying its petition, the district court lost jurisdiction to consider the preemption issue. 28 U.S.C. § 2342; *ITT World Com-munications*, 466 U.S. at 468–69, 104 S.Ct. at 1939–40; *Marine Terminal*, 400 U.S. at 69, 91 S.Ct. at 208. Accordingly, we will not consider the contention.[7]

---

7. This analysis also raises a question as to whether the district court had jurisdiction over ATA's section 202(a) claim. We agree with the parties that the FCC did not consider the partic-ular section 202(a) claim considered by the dis-trict court. Although contentions that a regula-tion or practice is unlawful because unreason-able should generally be referred to the FCC under the doctrine of primary jurisdiction, *see Ambassador, Inc. v. United States*, 325 U.S. 317, 324, 65 S.Ct. 1151, 1155, 89 L.Ed. 1637 (1945), referral is not required where the issue to be decided is a question of law. *See Great N.R. Co. v. Merchants Elevator Co.*, 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922); *Klicker v. Northwest Airlines*, 563 F.2d 1310, 1313 (9th Cir.1977); *ICC v. Big Sky Farmers & Ranchers Coop.*, 451 F.2d

511, 515 (9th Cir.1971). Because ATA's per se theory of section 202(a) involved only the con-struction of section 202(a), and incidentially California law, the district court properly re-tained jurisdiction over the claim, while sending the parties to the FCC to allow that agency to utilize its specialized, technical expertise to de-termine whether G.O. 107–B would interfere with the development of a rapid and efficient nationwide telecommunications network. To the extent that the FCC considered the issue of reasonableness at all, it did so as a matter of fact, without at all considering whether G.O. 107–B proscribed conduct which was criminal. *See ATA Petition*, 102 FCC2d at 5. Thus, the district court's determination of ATA's per se claim did not involve a review of the FCC's

## C. *Federal Aviation Act*

ATA argues that the district court erred in rejecting its claim that G.O. 107–B is preempted by the Federal Aviation Act, as amended by the Airline Deregulation Act of 1978 and that the judgment can be affirmed on this ground. The provision upon which it relies states:

> [N]o state or political subdivision thereof and no interstate agency or other political agency of two or more states shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority under subchapter IV of this chapter to provide air transportation.

49 U.S.C. § 1305(a)(1).

As an initial matter, G.O. 107–B does not appear to be a regulation "relating to rates, routes or services of any carrier." It clearly does not relate, directly or indirectly, to rates or routes. Nor does the regulation relate to "services" as we considered that term in *Hingson v. Pacific Southwest Airlines,* 743 F.2d 1408, 1415–16 (9th Cir. 1984) (Federal Aviation Act preempts state law which allegedly prohibits airline from requiring all handicapped persons to sit in a specified area of airplane). The type of telephone operation utilized by the airlines is not peculiar to airlines, and is similar to those operations used by other national service industries where reservations are required, such as hotels and motels, and car rental companies. We are presented with nothing in the Deregulation Act or its history indicating that Congress intended totally to preempt state regulation of utilities insofar as such regulation affects airlines.

 This is not, however, an appropriate case for the definitive resolution of the scope of federal preemption under the Deregulation Act. ATA's ability to maintain this claim depends upon the existence of a private right of action under section 1305(a). This very contention was considered by the Second Circuit, and we can see no reason to disagree with their holding that 49 U.S.C. § 1305(a) does not create a private right of action. *See Montauk–Caribbean Airways, Inc. v. Hope,* 784 F.2d 91, 97–98 (2d Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986); *see also Western Air Lines v. Port Auth. of New York and New Jersey,* 817 F.2d 222, 225 (2d Cir.1987); *petition for cert. filed,* 56 U.S.L.W. 3183 (U.S. Aug. 26, 1987) (No. 87–333). The requisite indicia is lacking in the legislative history of the statute [8] that Congress intended to create a private right of action or remedy under the statute. *See Cort v. Ash,* 422 U.S. 66, 78, 80, 82, 95 S.Ct. 2080, 2087, 2089, 45 L.Ed.2d 26 (1975) *Montauk–Caribbean Airways, Inc.,* 784 F.2d at 97–98. Nor does the law of this circuit permit an offensive challenge to the state regulation as violative of supremacy clause principles via 42 U.S.C. § 1983 because ATA's claim, to the extent it is not based on 49 U.S.C. § 1305(a), must be considered as being based on federal preoccupation of the field. *See White Mountain Apache Tribe v. Williams,* 810 F.2d 844, 850 (9th Cir.1984) (amended opinion), *cert. denied,* —— U.S. ——, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987).

Because there is no basis in federal law for the district court's injunction, its judgment must be reversed and judgment in favor of CPUC on its cross-motion for summary judgment must be granted. In so holding, however, we express no opinion as to the validity of G.O. 107–B under California law, or the availability of remedies under California law.[9] The district court's judgment on the 47 U.S.C. § 202(a) and state law claims is reversed with instructions to vacate the injunction against CPUC. The case is remanded with di-

---

order and was not prohibited by 28 U.S.C. § 2342.

**8.** *See* H.R.Rep. No. 95–1211, 95th Cong., 2d Sess. 16, *reprinted in* 1978 U.S.Code Cong. & Admin. News 3737, 3751–52.

**9.** Our disposition makes it unnecessary to consider CPUC's contention that the California Supreme Court's denial of ATA's application for leave to file a late petition for a writ of certiorari is functionally equivalent to a denial of a petition for certiorari for res judicata purposes under California law.

rections to enter judgment in favor of CPUC on its cross-motion for summary judgment on ATA's 47 U.S.C. § 202(a) claim, and to dismiss the state law claim for lack of jurisdiction. The district court's judgment dismissing the general preemption claims is affirmed.

AFFIRMED in part, REVERSED and REMANDED in part.