208 F.3d 741 (9th Cir. 2000)
 ALAN M. HOWARD, an individual; R. BORIS GREENBERG, an individual; KATHRYN PARAVENTI, an individual; MEHRDAD ETEMAD, an individual; on behalf of themselves and on behalf of all others similarly situated, Plaintiffs-Appellants,
v.
AMERICA ONLINE INC., a Corp.; JAMES V. KIMSEY, an individual; STEPHEN M. CASE, an individual; LENNERT J. LEADER, an individual; DOE, individuals 1-50; ROE, entities 51-100, inclusive, Defendants-Appellees.
 No. 98-56138
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 14, 2000
Decided March 29, 2000
 
 [Copyrighted Material Omitted][Copyrighted Material Omitted][Copyrighted Material Omitted]
 COUNSEL: Alec B. Wisner and H. Scott Leviant, Stanbury & Fishelman, Inc., Los Angeles, California, for the plaintiffs-appellants.
 Miles N. Ruthberg, Latham & Watkins, Los Angeles, California, for the defendants-appellees.
 Appeal from the United States District Court for the Central District of California; A. Andrew Hauk, District Judge, Presiding. D.C. No. CV-97-01642-AAH
 Before: James R. Browning, Alfred T. Goodwin and Robert R. Beezer, Circuit Judges.
 BEEZER, Circuit Judge:
 
 
 1
 Plaintiffs Alan M. Howard, R. Boris Greenberg, Kathryn Paraventi and Merhdad Etemad ("Plaintiffs") sued America Online, Inc., James V. Kimsey, Stephen M. Case, Lennert J. Leader and 100 "Doe" and "Roe" defendants (collectively "AOL") for: violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.SS 1962(c), 1962(d); violations of the Communications Act of 1934, 47 U.S.C. SS 151-613; false advertising in violation of California Business and Professional Code SS 17500-17509; fraud and deceit; negligence; unfair business practices in violation of California Business and ProfessionalCode SS 17200-17210; and declaratory and injunctive relief. The district court granted AOL's motion to dismiss. We have jurisdiction pursuant to 28 U.S.C. S 1291, and we affirm.
 
 
 2
 * Plaintiffs are subscribers of AOL, an "Internet (or information) service provider" ("ISP") that provides Internet access, electronic mail ("e-mail"), online conferencing and information directories, entertainment, software, electronic publications and original programming. See generally 47 U.S.C. S 230(f)(2) (West Supp. 1999) (defining interactive computer service). The individual defendants are officers who, according to Plaintiffs, managed AOL.
 
 
 3
 On March 13, 1997, Plaintiffs filed their original complaint, which claimed that AOL engaged in fraudulent billing practices, securities fraud, fraud against a packaging supplier, fraudulent promotion of its "flat-fee" program, improper charges to subscribers and violations of its duty to protect subscribers' privacy rights and copyrights. The district court granted AOL's motion to dismiss, with leave to amend, on September 22, 1997.
 
 
 4
 Plaintiffs filed their first amended complaint ("complaint") on October 22, 1997. Although Plaintiffs moved for class certification under Federal Rule of Civil Procedure 23(b), the district court orally refused to grant the motion. AOL moved for dismissal, which the district court granted with prejudice on May 19, 1998. Plaintiffs appeal.
 
 II
 
 5
 "A dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is reviewed de novo . Review is limited to the contents of the complaint. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir. 1996) (internal citations omitted).
 
 
 6
 The district court held that Plaintiffs failed to state a claim for violations of RICO. A violation under section 1962(c) requires proof of: "1) conduct 2) of an enterprise 3) through a pattern 4) of racketeering activity." Sedima S.P.R.L. v. Imrex Corp., 473 U.S. 479, 496 (1985) (internal note omitted). At issue is whether Plaintiffs properly alleged a pattern of racketeering activity.
 
 
 7
 A pattern is defined as "at least two acts of racketeering activity" within ten years of each other. 18 U.S.C. S 1961(5). Two acts are necessary, but not sufficient, for finding a violation. See H.J., Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 238 (1989). "[T]he term `pattern' itself requires the showing of a relationship between the predicates and of the threat of continuing activity." Id. at 239 (internal citation and quotation marks omitted).
 
 
 8
 * The district court dismissed Plaintiffs' fraudulent billing claims, based on mail and wire fraud, because they had been settled in an earlier action and could not constitute predicate acts under RICO. Plaintiffs assert that they are not barred from using these claims as part of a pattern of racketeering activity. We disagree.
 
 
 9
 On March 18, 1997, the California Superior Court approved a settlement between AOL and a class of its subscribers. See Hagen v. America Online, Inc., No. 971047 (Cal. Super. Ct. Mar. 18, 1997). The subscribers sued AOL for unfair business practices, fraud, breach of contract, unjust enrichment and negligent misrepresentation. The complaint alleged that AOL: failed to disclose connection and disconnection times; rounded up billing times; used misleading advertising regarding its hourly rate; unfairly calculated its service charge; improperly charged for downloading, delays, and time in "free areas"; failedto refund charges after cancellation; and made unauthorized withdrawals from checking accounts.
 
 
 10
 The Hagen class was defined as "all persons in the United States who at any time during the Class Period [July 14, 1991 to March 31, 1996] were subscribers of America Online Services." The settlement "permanently barred and enjoined" the class members from "asserting . . . against [AOL] any claims, rights, . . . of any nature, known or unknown, . . . which are alleged in the Amended Complaint, or which could or might have been alleged in the Amended Complaint and arise out of or are related to the matters referred to in the Amended Complaint."
 
 
 11
 In this case, Plaintiffs claimed violations of RICO, the Communications Act and California law proscribing false advertising, fraud and deceit, negligence and unfair business practices. The complaint stated that AOL: used both mail and wire fraud to improperly bill subscribers from 1992 to 1995; fraudulently manipulated its stock in 1995 and 1996; improperly billed for time in "free areas" from 1994 to 1996; improperly delayed cancellations from 1994 to "at least March 31, 1996"; made unauthorized withdrawals from subscribers' accounts; improperly used billing information and distributed false advertising related to its free trial program; made misrepresentations to PTP, a packaging company; and falsely promoted its "flat-fee" program. The proposed class included anyone who subscribed to AOL from March 13, 1993 to March 13, 1997; the complaint did not specify when Plaintiffs subscribed to AOL.
 
 
 12
 The district court found that Plaintiffs "clearly fall within the Settlement Class . . . . [They] have not presented any argument to the contrary; nor do they claim to have opted out of the Hagen settlement class . . . . Plaintiffs' attempt to repackage the claims asserted and settled in Hagen as predicate acts under RICO is therefore barred."
 
 
 13
 "Where a judicially approved settlement is under consideration, a federal court may consequently find guidance from general state law on the preclusive force of settlement judgments." Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 375 (1996). In California, interpretation of a settlement release is governed by contract principles. See General Motors Corp. v. Superior Court, 15 Cal. Rptr. 2d 622, 625 (Cal. Ct. App. 1993).
 
 
 14
 The Hagen settlement unequivocally bars claims that "arise out of or are related to the matters referred to" in the complaint. Plaintiffs' RICO claims cite the identical billing allegations as Hagen. The settlement bars the use of these claims by the same parties. See id. at 441; see also Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1287 (9th Cir. 1992) ("[A] federal court may release . . . a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.") (emphasis in original) (internal quotation marks omitted).
 
 
 15
 Plaintiffs counter that the Hagen settlement does not apply because one of the Plaintiffs, Boris Greenberg, did not subscribe to AOL until 1997. This contention was not raised before the district court. "As a general rule, we will not consider an issue raised for the first time on appeal . . . ." Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir. 1985). Even if we assume that Greenberg was not a subscriber until 1997, he was not damaged by AOL's actions prior to that time and cannot cite such allegations as RICO predicates. See Religious Tech. Ctr. v. Wollersheim, 971 F.2d 364, 366 n.4 (9th Cir. 1992).
 
 
 16
 The district court also relied on claim preclusion as a bar to considering Plaintiffs' billing allegations as predicate acts. Plaintiffs contend that the RICOpattern was not completed at the time of the Hagen settlement, and that the acts at issue in Hagen can therefore be considered predicates. This argument is meritless.
 
 
 17
 Claim preclusion in federal court can be based on a state court settlement. See Matsushita, 516 U.S. at 375. The preclusive effect of a state court judgment in federal court is based on state preclusion law. See Eichman v. Fotomat Corp., 759 F.2d 1434, 1437 (9th Cir. 1985). "Under California law, a final judgment on the merits will preclude further litigation on the same cause of action." Pension Trust Fund for Operating Eng'rs v. Triple A Mach. Shop, Inc., 942 F.2d 1457, 1460 (9th Cir. 1991) (citing Slater v. Blackwood, 126 Cal. Rptr. 225, 226 (Cal. 1975) (in bank)). A judicially approved settlement agreement is considered a final judgment on the merits. See Citizens for Open Access to Sand and Tide, Inc. v. Seadrift Ass'n, 71 Cal. Rptr. 2d 77, 84 (Cal. Ct. App. 1998).
 
 
 18
 There is no support for Plaintiffs' contention that the Hagen class could not claim RICO violations because the requisite pattern had not yet developed. Plaintiffs are part of the Hagen class and asserted identical billing claims that occurred during the same time period. Cf. Gamble v. General Food Corp., 280 Cal. Rptr. 457, 460 (Cal. Ct. App. 1991) ("[T]wo actions constitute a single cause of action if they both affect the same primary right."). The Hagen class could have claimed a RICO violation based on the billing fraud. Plaintiffs were part of that class and are barred from subsequently bringing a claim that they could have made earlier. See Pedrina v. Chun, 97 F.3d 1296, 1301 (9th Cir. 1996) (applying claim preclusion because predicate acts could have been raised in earlier state court action); Eichman, 759 F.2d at 1439 (holding that settlement agreement "does not preclude the pendent state claims in [the subsequent action] insofar as the latter alleges wrongful conduct occurring after the settlement date of the former"). But see County of Cook v. MidCon Corp., 773 F.2d 892, 908 (7th Cir. 1985) (stating that "[w]here . . . only some aspects of an allegedly fraudulent scheme were at issue in the prior suit, a subsequent RICO action based on the entire scheme presumably would not be barred") (emphasis added).
 
 
 19
 Plaintiffs argue that the billing claims, even if inadmissable as predicate acts, can be used as evidence of a racketeering pattern because the pattern "forms the basis of the [RICO] violation, not the underlying acts themselves." To show a pattern under RICO, Plaintiffs must prove that there are a sufficient number of predicate acts "indictable" as mail or wire fraud. See 18 U.S.C. SS 1961(1)(B), 1962(c). Citing acts as a part of a RICO pattern, without proving that they are indictable, is not sufficient. See Sigmond v. Brown, 828 F.2d 8, 9 (9th Cir. 1987) (holding that dismissal of RICO claim was appropriate where plaintiff did not present evidence that defendant committed mail fraud). Plaintiffs failed to allege a pattern of indictable billing claims.
 
 
 20
 We hold that the district court properly refused to consider the billing claims as RICO predicates.
 
 B
 
 21
 Plaintiffs claimed that part of the RICO pattern was the inducement of PTP, a packaging supplier, to expand its operations based on AOL's misrepresentations about its shipping needs. The district court refused to consider this claim as a RICO predicate because the misrepresentations were not related to the other predicates, and Plaintiffs lacked standing to bring a claim for injuries to PTP. Because the district court properly held that this claim was unrelated to the other alleged predicates, we do not address the standing issue.
 
 
 22
 Establishment of a pattern "requires the showing of a relationship between the predicates and of the threat of continuing activity." H.J., 492 U.S. at 239 (internal citation and quotation marks omitted). "Related" conduct "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240 (internal quotation marks omitted).
 
 
 23
 We have not decided whether acts are "related " when they share only the same participants. Plaintiffs cite to the Second Circuit's statement that "the involvement of similar participants is sufficient to demonstrate a relationship among the predicate acts." United States v. Simmons, 923 F.2d 934, 951 (2d Cir. 1991). In spite of Simmons, the Second Circuit subsequently held in Schlaifer Nance & Co. v. Estate of Warhol, 119 F.3d 91, 97 (2d Cir. 1997), that, based on the facts of that case, predicate acts committed by the same participant were not related. The Sixth Circuit has also held that claiming identical participants alone is insufficient to establish relatedness. See Vild v. Visconsi, 956 F.2d 560, 566-68 (6th Cir. 1992) (holding that acts by same defendants against plaintiff are unrelated to acts against third parties); cf. Hartz v. Friedman, 919 F.2d 469, 474 (7th Cir. 1990) (holding that acts against the same victims are insufficient to establish relatedness).
 
 
 24
 The facts here illustrate why merely having the same participants is insufficient to establish relatedness. The purpose, result, victim and method of the PTP misrepresentations are strikingly different from the wire and mail fraud, stock manipulation and flat-fee advertising claims. To hold that Plaintiffs have established relatedness solely because they implicate the same participants makes that requirement virtually meaningless.
 
 
 25
 We affirm the district court's holding that the PTP misrepresentations are not related to the other claimed predicate acts and cannot be considered part of Plaintiffs' RICO claim.
 
 C
 
 26
 Plaintiffs claimed that AOL committed securities fraud as part of a pattern of racketeering activity. In particular, Plaintiffs asserted that AOL misrepresented revenues, profits and number of subscribers; used improper accounting practices; and illegally sold stock at a profit. The district court held that Plaintiffs cannot use these claims to establish a RICO violation because of a statutory bar and because the claims lack relation to the other predicates. We agree.
 
 
 27
 The Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, S 107, 109 Stat. 737, 758 (Dec. 22, 1995), amended RICO so that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. S 1964(c) (Supp. II 1996). Plaintiffs argue that this amendment does not apply because they lack standing to bring securities fraud claims against AOL.
 
 
 28
 Section 1964(c) proscribes using as a predicate "any conduct that would have been actionable as [securities] fraud." (Emphasis added). Plaintiffs do not dispute that their securities fraud claims could be brought by a plaintiff with proper standing. The claims implicate "conduct that would have been actionable as [securities] fraud " and section 1964(c) bars their use as RICO predicates.
 
 
 29
 The district court held also that the securities fraud claims were not related to the other predicate acts. As noted, acts that share only the same participants are insufficient to establish relatedness. The securities fraud claims have a different purpose, result, victim and method than the billing fraud, misrepresentations against PTP and the flat-fee advertising claims. Plaintiffs failed to show that the securities fraud claims are related to the other predicate acts.
 
 
 30
 We hold that Plaintiffs' securities fraud claims cannot be used to establish a RICO violation.
 
 D
 
 31
 In October 1996, AOL started advertising its flat-fee program, which charged subscribers a monthly fee for unlimited Internet access, rather than the previous time charge. This change resulted in an overload of AOL's network, and prevented or delayed many subscribers' ability to access the Internet. Plaintiffs claimed that AOL, although aware that it could not process the volume, distributed a "flurry" of false and misleading advertising to promote its new flat-free program. We affirm the district court's holding that, assuming that the predicate acts were sufficiently pleaded, this claim failed to establish a RICO pattern.
 
 
 32
 Demonstrating a pattern "requires the showing of a relationship between the predicates and of the threat of continuing activity." H.J., 492 U.S. at 239 (internal citation and quotation marks omitted). The district court properly concluded that there was no threat of continuing activity.
 
 
 33
 To satisfy the continuity requirement, Plaintiffs must prove either "a series of related predicates extending over a substantial period of time[, i.e., closed-ended continuity]," H.J., 492 U.S. at 242, or "past conduct that by its nature projects into the future with a threat of repetition[, i.e., openended continuity]," id. at 241. Plaintiffs argue that they met this test by alleging that AOL began its false advertising in October 1996 and continues to do so as part of its regular way of conducting business.
 
 
 34
 "Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the closed-ended continuity] requirement." Id. at 242. Activity that lasts only a few months is not sufficiently continuous. See Allwaste, Inc. v. Hecht, 65 F.3d 1523, 1528 (9th Cir. 1995) (holding also that there is no strict one-year rule); Wollersheim, 971 F.2d at 366-67.
 
 
 35
 The complaint stated that AOL's "improper activities continue even at the present, in the form of misleading advertisements for `unlimited' access." This claim was not supported by any facts. Plaintiffs provided some specifics for advertisements made before February 1997, but gave no factual support for acts after that date. Because conclusory allegations are insufficient to preclude dismissal, see Associated Gen. Contractors of Am. v. Metropolitan Water Dist. , 159 F.3d 1178, 1181 (9th Cir. 1998), we hold that Plaintiffs failed to demonstrate closed-ended continuity.
 
 
 36
 "Open-ended continuity is shown by `past conduct that by its nature projects into the future with a threat of repetition [,' i.e., p]redicate acts that specifically threaten repetition or that become a `regular way of doing business.' " Allwaste, 65 F.3d at 1528 (quoting H.J., 492 U.S. at 241, 242). The district court held that Plaintiffs failed to state facts that reasonably imply that AOL would continue its false advertising past February 1997.
 
 
 37
 Plaintiffs tell us that AOL's regular way of doing business was to mislead the public. The complaint stated that AOL "engaged in repeated fraudulent schemes as an ongoing course of business." This general statement refers to all allegations of improper activity in the complaint, not just the false advertising. There is evidence that AOL's ability to process the volume was improving and, pursuant to a consent decree with the Federal Communications Commission ("FCC"), that AOL would better explain its program. Plaintiffs present no facts indicating that misleading advertising would continue into the future, particularly given that the problems stemmed from a one-time change in pricing policy.See, e.g., Durning v. Citibank, Int'l, 990 F.2d 1133, 1139 (9th Cir. 1993) (holding that predicate acts arising from a single event--the dissemination of a misleading document--did not satisfy the open-ended continuity requirement). The complaint does not sufficiently allege that AOL engaged in an open-ended pattern of racketeering activity.
 
 
 38
 We affirm the district court's holding that Plaintiffs' false advertising claims failed to establish a RICO pattern.
 
 E
 
 39
 Plaintiffs challenge the district court's holding that the complaint did not satisfy Federal Rule of Civil Procedure 9(b) because the claims did not show each defendants' connection to the fraudulent flat-fee advertisements. See 18 U.S.C. SS 1341 (wire fraud), 1343 (mail fraud). Because the district court properly held that these claims did not establish a RICO pattern, we decline to address this issue.
 
 F
 
 40
 Plaintiffs contend that the district court erroneously dismissed their claim that AOL engaged in a conspiracy in violation of section 1962(d). See 18 U.S.C. S 1962(d) ("[I]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."). The district court concluded that Plaintiffs failed to state that the defendants were part of a RICO enterprise, agreed to violate the substantive provisions of RICO or agreed to participate in a RICO conspiracy. In particular, the district court held that the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy. We agree.
 
 
 41
 "A conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense, but it suffices that he adopt the goal of furthering or facilitating the criminal endeavor." Salinas v. United States, 522 U.S. 52, 65 (1997). A defendant must also have been "aware of the essential nature and scope of the enterprise and intended to participate in it. " Baumer v. Pachl, 8 F.3d 1341, 1346 (9th Cir. 1993) (internal quotation marks omitted). To establish a violation of section 1962(d), Plaintiffs must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses. See id.
 
 
 42
 Plaintiffs argue that the district court erroneously relied on our holding in Wollersheim. See 971 F.2d at 367 n.8 ("Because we find that [the plaintiff] has failed to allege the requisite substantive elements of RICO, the conspiracy cause of action cannot stand."). If a substantive violation is properly pleaded, a conspiracy claim may survive a factfinder's conclusion that there is not sufficient evidence to prove the violation. See Neibel v. Trans World Assurance Co., 108 F.3d 1123, 1127 (9th Cir. 1997) (analyzing Wollersheim). "[I]f the section 1962(c) claim does not state an action upon which relief could ever be granted, regardless of the evidence, then the section 1962(d) claim cannot be entertained." Id. (emphasis in original) (citing Wollersheim, 971 F.2d at 367 n.8).
 
 
 43
 The district court granted AOL's Rule 12(b)(6) motion and held that Plaintiffs failed to state a claim upon which relief can be granted. Plaintiffs cannot claim that a conspiracy to violate RICO existed if they do not adequately plead a substantive violation of RICO. See id. Even if Plaintiffs properly claimed that the defendants agreed to be a part of an enterprise, the failure to allege substantive violations precludes their claim that there was a conspiracy to violate RICO.
 
 
 44
 We affirm the district court's dismissal of Plaintiffs' conspiracy claim.
 
 III
 
 45
 Plaintiffs claimed that AOL violated the Communications Act, 47 U.S.C. SS 201, 202(b), 551, by making unreasonable charges, practices, classifications or regulations; by unreasonably prejudicing some subscribers by favoring others; and by failing to protect subscriber privacy. The district court properly held that AOL is not a common carrier and, therefore, did not violate the Communications Act. See, e.g., 47 U.S.C. SS 201, 202(b) (regulating only common carriers).
 
 
 46
 "The term `common carrier' . . . means any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or in interstate or foreign transmission of energy . . . ." 47 U.S.C. S 153(10) (Supp. III 1997). "Due to the circularity of the definition, resort must be had to court and agency pronouncements to ascertain the term's meaning." FCC v. Midwest Video Corp., 440 U.S. 689, 701 n.10 (1979).
 
 
 47
 The Supreme Court has defined a common carrier as one that "makes a public offering to provide [communications facilities] whereby all members of the public who choose to employ such facilities may communicate or transmit intelligence of their own design and choosing." Id. at 701 (alteration in original) (quoting In re Industrial Radiolocation Serv., 5 F.C.C.2d 197, 202 (1966) (report and order)). "A common carrier does not `make individualized decisions, in particular cases, whether and on what terms to deal.' " Id. (quoting National Ass'n of Regulatory Utility Comm'rs v. FCC, 525 F.2d 630, 641 (D.C. Cir. 1976) ("NARUC I") (describing the "quasi-public" nature of common carriers)).
 
 
 48
 Congress created the FCC to enforce the Communications Act. See 47 U.S.C. S 151 (Supp. III 1997). The Supreme Court's "opinions have repeatedly emphasized that the [FCC's] judgment regarding how the public interest is best served is entitled to substantial judicial deference." FCC v. WNCN Listeners Guild, 450 U.S. 582, 596 (1981).
 
 
 49
 Federal regulations describe a common carrier as "any person engaged in rendering communication service for hire to the public." 47 C.F.R. S 21.2. The FCC has declared that, under the Communications Act, " `carriers' is synonymous with the term `common carriers,' which does not include ISPs." In re Non-Accounting Safeguards, 11 F.C.C.R. 21905, 22034 (1996) (proposed rule) (citing 47 U.S.C. S 153(10)). This opinion stems from the FCC's distinction between "basic" and "enhanced" services.
 
 
 50
 The FCC has concluded that common carriers offer "basic" information transport rather than "enhanced" services, which implicate the transfer and storage of information that subscribers can access. See In re Second Computer Inquiry, 77 F.C.C.2d 384, 417-23 (1980) (final decision); 47 C.F.R. 64.702(a) ("[E]nhanced service shall refer to services . . . which employ computer processing applications that act on the format, content, code, protocol or similar aspects of the subscriber's transmitted information; provide the subscriber additional, different, or restructured information; or involve subscriber interaction with stored information. Enhanced services are not regulated under Title II of the Act."). Enhanced services "include[ ] access to the Internet and other interactive computer networks." In re Access Charge Reform, 12 F.C.C.R. 15982, 16131 n.498 (1997) (proposed rule). The FCC has consistently stated that ISPs are not common carriers. See In re Federal-State Joint Board on Universal Service, 12 F.C.C.R. 87, 479 (1996) (recommended decision) ("[Enhanced Service Providers ("ESPs") ] note that the Commission has traditionally defined on-line and Internet services as enhanced services and has not regulated [ESPs ] as common carriers . . . .").
 
 
 51
 The FCC's construction of "common carrier" is a reasonable interpretationof an ambiguous statute. See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984). The Telecommunications Act of 1996, which amended the Communications Act, further supports the FCC. Congress provided, in a section prohibiting obscene or harassing communications, that "[n]othing in this section shall be construed to treat interactive computer services as common carriers." 47 U.S.C. S 223(e)(6) (Supp. III 1997). "The normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning." Sorenson v. Secretary of Treasury, 475 U.S. 851, 860 (1986) (internal quotation marks omitted). Congress also stated that its aim is "to preserve the vibrant and competitive free market that presently exists for the Internet and other interactive computer services, unfettered by Federal or State regulation." 47 U.S.C.S 230(b)(2) (West Supp. 1999). The FCC's interpretation meets this policy goal.
 
 
 52
 Plaintiffs argue that AOL should be regulated in part as a common carrier. The D.C. Circuit stated that "[s]ince it is clearly possible for a given entity to carry on many types of activities, it is at least logical to conclude that one can be a common carrier with regard to some activities but not others." National Ass'n of Regulatory Utility Comm'rs v. FCC, 533 F.2d 601, 608 (D.C. Cir. 1976) ("NARUC II"); see also McDonnell Douglas Corp. v. General Tel. Co., 594 F.2d 720, 725 n.3 (9th Cir. 1979) (citing NARUC II). The facts here are distinguishable.
 
 
 53
 NARUC II involved the objection of cable operators, which previously had not been classified as common carriers, to the FCC's assertion of preemption over leased access two-way channels. See 533 F.2d at 605. These channels used a different bandwidth than the normal one-way channels and constituted a distinct mode of cable service. See id. at 605-06. Conversely, e-mail and "chat rooms," which Plaintiffs cite as common carrier activity, are integral to AOL's services.
 
 
 54
 "The service that the Internet access providers offer to members of the public is Internet access . . . . " In re FederalState Joint Board on Universal Service, 13 F.C.C.R. 11501, 11539 (1998) (report to Congress) (contrasting services of application providers such as Juno, which offered only email). The FCC has stated that hybrid services like those offered by AOL "are information[, i.e., enhanced] services, and are not telecommunication services." Id. at 11529. This conclusion is reasonable because e-mail fits the definition of an enhanced service--the message is stored by AOL and is accessed by subscribers; AOL does not act as a mere conduit for information. See id. at 11539. Even chat rooms, where subscribers can exchange messages in "real-time, " are under AOL's control and may be reformatted or edited. See id. at 11537-38. Plaintiffs have failed to show that AOL offers discrete basic services that should be regulated differently than its enhanced services. Accord America Online, Inc. v. GreatDeals.Net, 49 F. Supp. 2d 851, 855-57 (E.D. Va. 1999) (holding that AOL is not a common carrier); CompuServe, Inc. v. Cyber Promotions, Inc., 962 F. Supp. 1015, 1025 (S.D. Ohio 1997) ("[ISPs] have been held not to be common carriers.") (citing Religious Tech. Ctr. v. Netcom On-Line Communication Servs., Inc., 907 F. Supp. 1361, 1369 n.12 (N.D. Cal. 1995) (holding, in copyright suit, that ISP was not a common carrier)).
 
 
 55
 We hold that AOL is not a common carrier under the Communications Act.
 
 IV
 
 56
 Plaintiffs sought a declaration that AOL violated Plaintiffs' constitutional rights and improperly asserted ownership of Plaintiffs' copyrights. The district court dismissed these counts in part because Plaintiffs failed to state claims for relief underfederal law, thereby depriving the court of jurisdiction. We agree.
 
 
 57
 A request for declaratory judgment does not provide an independent basis for federal jurisdiction. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 672 (1950). The district court concluded that Plaintiffs' constitutional claims lacked the necessary state action and that their copyright allegations failed to state a claim under federal copyright law.
 
 
 58
 Plaintiffs argue that their claims under the First, Fourth, Fifth, Ninth, and Fourteenth Amendments do not require state action. Griswold v. Connecticut, 381 U.S. 479 (1965), which Plaintiffs cite in support of their argument, expressly noted that the Fourth and Fifth Amendments protect "against all governmental invasions." Id. at 484 (emphasis added). The "general right to privacy, . . . Fourteenth Amendment liberty[,] and the other elements of those more general rights are obviously not protected against private infringement." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 278 (1993) (emphasis in original) (internal citations omitted) (holding that only rights under the Thirteenth Amendment protect against private action); see also United States v. Young, 153 F.3d 1079, 1080 (9th Cir. 1998) ("The Fourth Amendment limits searches conducted by the government, not by a private party, unless the private party acts as an `instrument or agent' of the government."); Rank v. Nimmo, 677 F.2d 692, 701 (9th Cir. 1982) ("The Due Process Clause of the Fifth Amendment applies to actions of the federal government and not to individual activities of private actors[, unless] . . . the action of the latter may be fairly treated as that of the [government] itself.") (internal quotation marks omitted).
 
 
 59
 Plaintiffs counter that AOL is a "quasi-public utility" that "involv[es] a public trust." This claim is insufficient to hold that AOL is an "instrument or agent" of the government. There is nothing in the record that supports the contention that AOL should be considered a state actor. Accord Thomas v. Network Solutions, Inc., 176 F.3d 500, 511 (D.C. Cir. 1999) (holding that company in charge of Internet domain names is a private actor); Cyber Promotions, Inc. v. America Online, Inc., 948 F. Supp. 436, 443-44 (E.D. Pa. 1996) (holding that AOL is not a state actor). We conclude that Plaintiffs did not sufficiently plead constitutional claims against AOL; thus, these claims cannot support federal jurisdiction over the request for declaratory and injunctive relief.
 
 
 60
 Plaintiffs asserted that federal jurisdiction was based also on violations of federal copyright law. Federal jurisdiction under the Copyright Act, 17 U.S.C. SS 101-810, exists:
 
 
 61
 if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction . . . or asserts a claim requiring construction of the Act, .. . or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposi tion of the claim.
 
 
 62
 Topolos v. Caldewey, 698 F.2d 991, 993 (9th Cir. 1983) (alterations in original) (quoting T.B. Harms Co. v. Eliscu, 339 F.2d 823, 828 (2d Cir. 1964)).
 
 
 63
 The district court held that Plaintiffs alleged that AOL improperly transferred copyright ownership, which was insufficient to support federal jurisdiction. This conclusion gives the complaint too much credit. Although Plaintiffs stated that AOL transferred ownership in violation of 17 U.S.C.S 204, and continued to "improperly take[ ] " copyrighted material, the complaint makes clear that ownership is not at issue. Rather, Plaintiffs claimed that AOL asserted a license "without proper notice, adequate compensation and bilateral negotiation." Indeed, Plaintiffs quote the AOL agreement, which expressly refers to a "license to use" the material.
 
 
 64
 Plaintiffs argue that ITSI T.V. Prods., Inc. v. California Auth. of Racing Fairs, 785 F. Supp. 854, 862 (E.D. Cal. 1992), rev'd in part sub nom. ITSI T.V. Prods., Inc. v. Agricultural Ass'ns, 3 F.3d 1289 (9th Cir. 1993), supports the proposition that there is federal jurisdiction over AOL's vicarious liability for the infringement of copyrights. ITSI is inapposite; Plaintiffs did not cite any acts of infringement, either with or without AOL's involvement.
 
 
 65
 Plaintiffs claimed merely that AOL enacted an improper license agreement. The ownership of copyrights is not at issue, and Plaintiffs have not claimed any infringement, or requested relief, under the Copyright Act. The copyright claims do not support federal jurisdiction. See Topolos, 698 F.2d at 993-94; Dolch v. United Cal. Bank, 702 F.2d 178, 180-81 (9th Cir. 1983).
 
 
 66
 We hold that Plaintiffs' constitutional and copyright claims are insufficient bases for federal jurisdiction.
 
 V
 
 67
 Plaintiffs do not challenge the district court's holding that, given the lack of jurisdiction over the federal claims, dismissal of the state law claims was proper. "When federal claims are dismissed before trial . . . pendant state claims also should be dismissed." Wollersheim, 971 F.2d at 367-68 (alteration in original) (quoting Jones v. Community Redevelopment Agency, 733 F.2d 646, 651 (9th Cir. 1984)).
 
 
 68
 We affirm the dismissal of the state law claims.
 
 AFFIRMED