**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CHRISTOPHER W. HESSE; NATHANIEL
OLSON,

     *Plaintiffs-Appellants,*

v.

SPRINT CORPORATION,
a foreign corporation,

     *Defendant,*

and

SPRINT SPECTRUM LP,
doing business as Sprint PCS,

     *Defendant-Appellee.*

No. 08-35235

D.C. No.
2:-6-cv-00592-JCC

OPINION

Appeal from the United States District Court
for the Western District of Washington
John C. Coughenour, District Judge, Presiding

Argued and Submitted
November 5, 2009—Seattle, Washington

Filed March 10, 2010

Before: Arthur L. Alarcón, Andrew J. Kleinfeld and
Richard R. Clifton, Circuit Judges.

Opinion by Judge Clifton

3845

**COUNSEL**

David Elliot Breskin and Daniel Foster Johnson (argued), Breskin Johnson & Townsend PLLC, Seattle, Washington;

and Bradley Jerome Moore, Stritmatter Kessler Whelan Coluccio, Seattle, Washington, for the plaintiffs-appellants.

Gavin W. Skok and David Brenner, Riddell Williams, PS, Seattle, Washington; Robert Bruce Allensworth, Brian M. Forbes, Ryan M. Tosi, and Andrew Glass (argued), Kirkpatrick & Lockhart Preston Gates Ellis LLP, Boston, Massachusetts, for the defendant-appellee.

---

## OPINION

CLIFTON, Circuit Judge:

This case requires us to consider whether a broad release of claims in a nationwide settlement agreement between Sprint and its customers precludes the present class action involving a Washington state tax that Sprint invoiced to its Washington customers. That nationwide settlement arose out of a lawsuit that challenged Sprint's billing of customers for certain federal regulatory fees. Because we conclude that the Washington Plaintiffs' interests were not adequately represented in the prior action and that their claims are not "based on the identical factual predicate as that underlying the claims in the settled class action," *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008), we hold that the prior settlement did not release the claims at issue in this case, and we vacate the district court's grant of summary judgment in favor of Sprint.

## I. Background

The State of Washington imposes a business and occupation tax ("B&O tax") on every person engaged in business activities in the state. Wash. Rev. Code § 82.04.220. Washington law specifies that the B&O tax must be collected from a business as part of its "operating overhead" rather than imposed as a separate "tax[ ] upon the purchasers or custom-

ers." *Id.* § 82.04.500 (the "B&O Tax Statute"). It is alleged that Sprint passed the tax directly to its customers as a separate line item labeled "Washington State B&O Tax Surcharge" starting in April 2001.

Christopher Hesse and Nathaniel Olson ("the Washington Plaintiffs") filed separate class actions in Washington state court alleging violations of the B&O Tax Statute and the Washington Consumer Protection Act ("CPA"), Wash. Rev. Code § 19.86.030, as well as common law breach of contract and unjust enrichment. Sprint removed both cases to the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1441(a).

The district court dismissed all claims predicated on the B&O Tax Statute as preempted by the Federal Communications Act ("FCA"), 47 U.S.C. § 332(c)(3)(A), but denied Sprint's motion to dismiss insofar as it related to "Plaintiffs' other contract and CPA claims." The district court then certified a class of "all current and former Washington state wireless service customers of Sprint, who have been charged and paid to Sprint a 'Washington State B&O Tax Surcharge' " with the Washington Plaintiffs as class representatives.

After filing its answer to the Washington Plaintiffs' consolidated complaint, Sprint moved for summary judgment, arguing for the first time that the suit was barred by a class settlement between Sprint and its customers approved by a Kansas state court in 2006 (the "*Benney* Settlement").

The *Benney* Settlement resulted from several class actions filed in 2002 in various state courts and then dismissed and refiled in Kansas state court in 2005 for purposes of settlement. One of those class actions was initiated in Missouri by Greg Benney (the "*Benney* Class Plaintiff"), who alleged that Sprint's surcharges to recoup federal regulatory fees violated consumer protection laws, represented a breach of contract, and resulted in unjust enrichment. The relevant regulatory

fees were defined in the settlement agreement to include only specified fees imposed to recover the cost of compliance with federally mandated programs.[1] The *Benney* class was defined to consist of "all current and former Sprint wireless customers in the United States who were customers for any time during the period December 1, 2000 to the Effective Date [of the settlement in late 2006] and who were charged Regulatory Fees (as defined in [the *Benney* Settlement])." It is not disputed that the named plaintiffs in the case before us were members of the *Benney* class and that they did not opt out.

Sprint settled with the nationwide plaintiff classes, including the *Benney* class, in February 2006. The settlement provided various benefits, including phone cards and invoice credits on future bills, to members of the various subclasses of the *Benney* class who submitted claim forms. Sprint agreed, in a paragraph titled "Injunctive Relief as to Billing and Advertising Practices Related to the Regulatory Fees," to disclose for at least two years that the regulatory fees and other surcharges to recoup the cost of compliance with government programs are "not taxes or government mandated charges." The term of the *Benney* Settlement relevant to Sprint's defense in the present case is Paragraph 22(a)(1),

---

[1] The Benney Settlement specified that the "Regulatory Fees" at issue in the *Benney* class action included only

> (i) the "USA Regulatory Obligations & Fees" fee or surcharge on subscriber invoices that Sprint charged subscribers for the cost of implementing federally mandated programs for Enhanced 911 ("E911") emergency calling Phase II and federal Universal Service Fund contributions ("USF"); (ii) "Federal Telephone Number Pooling" fee or surcharge on subscriber invoices that Sprint charged subscribers to recover costs of implementing the federally mandated program for wireless number portability; (iii) "Federal USF," "Federal E911" and "Federal Wireless Number Pooling and Portability" fees or surcharges on subscriber invoices that Sprint charged wireless subscribers to recover costs of implementing federally mandated programs for wireless number pooling and portability, federal Universal Service Fund contributions, and Enhanced 911 emergency calling Phase II.

which purported to release Sprint from a set of potential claims much broader than the surcharges for federal regulatory fees that were the subject of the *Benney* action:

> any and all claims . . . that have been, could have been, or in the future might be asserted in the [*Benney*] Action[ ] or in any other court or proceeding which relate in any way to allegations that . . . [Sprint] failed properly to disclose or otherwise improperly charged for surcharges, regulatory fees or excise taxes, including but not limited to the Regulatory Fees; and all other causes of action . . . whether based on federal, state, or local statute . . . that have been, could have been, may be, or could be alleged or asserted by any Class member . . . against [Sprint] relating to . . . the subject matter of any of the claims alleged in the *Benney* Action.

The Kansas court granted final approval of the *Benney* Settlement in November 2006. That order incorporated the settlement's release by reference and included its own expansive release of liability.[2]

The district court granted Sprint's motion for summary judgment in the present case based on these broad releases of liability.[3]

---

[2]The Kansas court's order approving the *Benney* Settlement purported to release Sprint

> from any liability to each and every *Benney* . . . Settlement Class members [sic] . . . arising from or relating to any and all claims that were or could have been alleged in the *Benney* matter, including but not limited to claims which relate in any way to allegations that . . . Sprint failed properly to disclose or otherwise improperly charged for surcharges, regulatory fees or excise taxes, including but not limited to Regulatory Fees . . . .

[3]Sprint also moved for summary judgment on the grounds that the voluntary payment doctrine bars the Washington Plaintiffs' contract and

## II.   Discussion

### A.   Federal Preemption

**[1]** We start with the district court's dismissal of the claims based on violations of the B&O Tax Statute. The district court held that the Washington state law was preempted by a provision of the FCA decreeing that "no State or local government shall have any authority to regulate the entry of or the rates charged by any commercial mobile service or any private mobile service." 47 U.S.C. § 332(c)(3)(A)). Our court subsequently held, to the contrary, that the B&O Tax Statute does not regulate "the rates charged" but only "the method of disclosure" and is thus not preempted by the FCA. *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053, 1058 (9th Cir. 2008). We therefore vacate the district court's Amended Order dated February 13, 2007, which dismissed the Washington Plaintiffs' claims for violations of the B&O Tax Statute.

### B.   The Benney *Settlement*

We turn next to the district court's grant of summary judgment on the ground that the Washington Plaintiffs' claims were released by the *Benney* Settlement. We review the district court's grant of summary judgment *de novo*. *United States v. Milner*, 583 F.3d 1174, 1182 (9th Cir. 2009).

Sprint argues that the Washington Plaintiffs' claims in this case fall within the broad release of liability in the *Benney* Settlement because they are "claims . . . that . . . could have been . . . asserted . . . in [an]other court or proceeding which

---

unjust enrichment claims, that there was no breach of contract under its interpretation of the contract, that a claim for unjust enrichment is inconsistent with a claim for breach of contract, and that CPA claims fail in the absence of deception and causation. The district court did not reach these alternative grounds.

relate . . . to allegations that . . . [Sprint] failed properly to disclose or otherwise improperly charged for surcharges, regulatory fees or excise taxes . . . ." If this release were to operate according to that interpretation, the Washington Plaintiffs would have no recourse for their surcharge-related claims in federal court because "[c]laim preclusion in federal court can be based on a state court settlement." *Howard v. America Online, Inc.*, 208 F.3d 741, 748 (9th Cir. 2000). We conclude, however, that the release cannot preclude the Washington Plaintiffs' claims because the *Benney* Class Plaintiff did not adequately represent the Washington Plaintiffs and because the Washington Plaintiffs' claims are based on a set of facts different from those underlying the claims settled in the *Benney* Settlement. For these two independent reasons, we vacate the district court's order granting summary judgment.

### 1.    Collateral Review

**[2]** At the threshold, Sprint contends that we may not inquire into the adequacy of representation in the *Benney* action because such an inquiry is an impermissible collateral attack on the Kansas court's judgment. The Full Faith and Credit Act generally requires us to afford the "judicial proceedings" of any State "the same full faith and credit . . . as they have by law or usage in the courts of such State" as determined by the rules of the State. 28 U.S.C. § 1738; *see Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). But a state court's power to declare the preclusive effect of its judgments is not without limit: "A State may not grant preclusive effect in its own courts to a constitutionally infirm judgment," and we are "not required to accord full faith and credit to such a judgment." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982), *quoted in Epstein v. MCA, Inc. (Epstein II)*, 179 F.3d 641, 645 (9th Cir. 1999).

*In Matsushita*, the Supreme Court reversed a decision of our court that did not accord full faith and credit as required by 28 U.S.C. § 1738 to a state court judgment approving a

settlement that released exclusively federal claims. 516 U.S. at 373, *rev'g Epstein v. MCA, Inc. (Epstein I)*, 50 F.3d 644 (9th Cir. 1995). The Supreme Court held that we must look to state law in determining the preclusive effect of a state court judgment releasing such claims. *Id.* at 374. Our court's approach in *Epstein I* had failed to apply the Delaware Supreme Court's claim preclusion doctrine under which a settlement could release even exclusively federal claims.

On remand from the Supreme Court in *Matsushita*, the federal plaintiff class argued that the named plaintiffs of the settled state court class did not adequately represent their interests as to the federal claims in state court. *Epstein II*, 179 F.3d at 644. We stated that while "broad collateral review of the adequacy of representation . . . is not available" after *Matsushita*, "[l]imited collateral review would be appropriate . . . to consider whether the procedures in the prior litigation afforded the party against whom the earlier judgment is asserted a 'full and fair opportunity' to litigate the claim or issue." *Id.* at 648-49 (quoting *Kremer*, 456 U.S. at 480); *see also Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 258 & n.6 (2d Cir. 2001) (holding that under the *Epstein II* standard, collateral review is permissible where the court that approved the settlement did not address the adequacy of representation as to a specific subset of a class "whose injuries manifested after depletion of the settlement funds").

**[3]** Normally we will satisfy ourselves that the party received the requisite notice, opportunity to be heard, and adequate representation by referencing the state court's findings. *See Epstein II*, 179 F.3d at 648. In *Epstein II* we found no need to review collaterally the Delaware Chancery Court's decision because that court expressly found that class representation was adequate as to the relevant federal claims, *id.* at 643, 649-50,[4] and the Supreme Court's decision in *Matsushita*

---

[4]The case for adequate representation was much stronger in *Epstein*, where the Delaware Chancery Court specifically released the federal

was based on its own conclusion that the Delaware judgment satisfied due process. *See id.* at 645 (citing *Matsushita*, 516 U.S. at 379). In this case, however, the Kansas court made no finding that the *Benney* Class Plaintiff's representation of the class was adequate as to the B&O Tax Surcharge claims at issue in this case, and we are faced with no Supreme Court decision premised on the constitutional validity of the Kansas judgment.

The Kansas court's findings are insufficient to demonstrate that the *Benney* Class Plaintiff adequately represented the Washington Plaintiffs. The Kansas court found that the *Benney* Class Plaintiff's Sprint bills were typical of the other class members' bills, but only "in that each bill imposed the [defined] Regulatory Fees." The Kansas court also noted that the *Benney* Class Plaintiff "paid the Regulatory Fees at issue in this case" but did not make an explicit finding that the *Benney* Plaintiff was an adequate representative of the class, much less that he was an adequate class representative as to the B&O Tax Surcharge claims. Because that question was not addressed with any specificity by the Kansas court, it is a proper subject for collateral review. *Cf. id.* at 649 (relying on the Delaware court's express finding of "adequate representation" and "notice plus an opportunity to be heard and participate in the litigation." (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985))).

**[4]** Consistent with *Epstein II*, we review the *Benney* Judgment only to determine whether, in the absence of a specific finding by the Kansas court, its judgment satisfies due process

claims at issue in the objectors' action, *Matsushita*, 516 U.S. 371-72, and both identical classes of shareholders advanced claims "aris[ing] out of the same transaction" — the tender offer by which their shares in a corporation were sold. Nothing distinguished the subsequent class from the identical settled class except that the subsequent class filed federal claims in federal court and objected to the state court settlement, which had been predicated on state law claims. *Epstein I*, 50 F.3d at 666; *Epstein II*, 179 F.3d at 643.

as to the claims at issue here, and whether, under Kansas law, it precludes the Washington Plaintiffs' claims. *See id.* at 645.

## 2. Inadequate Class Representation

The *Benney* Class Plaintiff was not an adequate representative for the claims asserted by the Washington Plaintiffs. Without adequate representation, a court order approving a claim-preclusive class action settlement agreement cannot satisfy due process as to all members of the class. *See Shutts*, 472 U.S. at 812 ("[T]he Due Process Clause . . . requires that the named plaintiff at all times adequately represent the interests of the absent class members."); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them."); *Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992) ("[I]f the plaintiff was not adequately represented in the prior action, or there was a denial of due process, then the prior decision has no preclusive effect.").

**[5]** Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The *Benney* Class Plaintiff's representation of the Washington Plaintiffs was inadequate for both reasons.

**[6]** First, the *Benney* Class Plaintiff did not share the Washington Plaintiffs' B&O Tax Surcharge claims, or even pretend to prosecute those claims on their behalf. *The Benney* Class Plaintiff was a resident of Missouri who never paid the Washington B&O Tax Surcharge. It is evident that the *Benney* Class Plaintiff did not vigorously prosecute the claims relevant to this case. His petition, the settlement agreement it induced, and the judgment approving that settlement agree-

ment all confirm that the *Benney* class action was brought to remedy a different set of injuries: Sprint's nationwide surcharges that shifted to its customers certain costs imposed by the federal government.

[7] Second, as a result of not possessing the same type of claim as the Washington Plaintiffs, the *Benney* Class Plaintiff had an insurmountable conflict of interest with those members of the class. Conflicts of interest may arise when one group within a larger class possesses a claim that is neither typical of the rest of the class nor shared by the class representative. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625-27 (1997) (holding class representation inadequate because of the conflict of interest between class members manifesting asbestos injuries and those with yet undiagnosed injuries). In this case, the *Benney* Class Plaintiff's interest in settling his federal Regulatory Fee claims, even at the cost of a broad release of other claims he did not possess, was in conflict with the Washington Plaintiffs' unrepresented interest in prosecuting their B&O Tax Surcharge claims. The *Benney* Class Plaintiff's representation of the Washington Plaintiffs was therefore inadequate as to those claims.

[8] The *Benney* Judgment would be constitutionally infirm if it were interpreted, as Sprint contends it should be, to preclude the B&O Tax Surcharge claims at issue in this case, because the *Benney* Class Plaintiff's representation of the Washington Plaintiffs failed to satisfy due process as to those claims.[5] Thus, even if Kansas law — contrary to our interpretation of it below — did allow the Benney Judgment to release the Washington Plaintiffs' claims related to the B&O

---

[5]We do not set aside the Kansas court's approval of the settlement. Indeed, we accord that judgment full faith and credit and presume that it is binding on all claims that it properly released under Kansas law, including any claims of the Washington Plaintiffs pertaining to the federal regulatory fees at issue in *Benney*. We hold only that any release of the B&O Tax Surcharge claims at issue in this case by the judgment approving the *Benney* Settlement would violate due process.

Tax Surcharge, we would not be bound to give the *Benney* Judgment that effect.

### 3.    Identical Factual Predicate

Even apart from due process concerns, a settlement agreement's bare assertion that a party will not be liable for a broad swath of potential claims does not necessarily make it so. *See Williams*, 517 F.3d at 1134 ("While Boeing may have drafted the settlement agreement to include as broad a release as possible, the release would have only been enforceable as to subsequent claims . . . depending upon the same set of facts." (internal quotations marks omitted)).

As a threshold matter, Sprint contends that we may not consider the Washington Plaintiffs' argument that their claims have a different factual predicate from the claims involved in the *Benney* Settlement because they raised that argument for the first time in a motion for reconsideration after the district court granted Sprint's motion for summary judgment, and the Washington Plaintiffs did not amend their notice of appeal after the district court denied their motion for reconsideration. *See Intercontinental Travel Mktg. v. FDIC*, 45 F.3d 1278, 1286 (9th Cir. 1994) ("Raising an issue for the first time in a motion to reconsider is not considered adequate preservation of the issue at a summary judgment stage.").

We have discretion to consider an issue raised for the first time on appeal "(1) where review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process; (2) where there is a change in the law creating a new issue; or (3) when the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed." *Comedy Club, Inc. v. Improv West Assocs.*, 553 F.3d 1277, n.11 (9th Cir. 2009) (internal quotation marks omitted). We exercise that discretion here. The Washington Plaintiffs' "identical factual predicate" argument is a mixed question of

law and fact. They argue both that a settlement must be based on the "identical factual predicate" as a subsequent claim to preclude that claim, and that the *Benney* claims and the B&O Tax Surcharge claims do not share an identical factual predicate. We are persuaded to consider this argument because it is conceptually related to the arguments raised in response to Sprint's motion for summary judgment in which Sprint first put forward the theory that the *Benney* Settlement released the Washington Plaintiffs' claims, and the pertinent factual record regarding the basis for the claims in both cases is fully developed.

**[9]** A settlement agreement may preclude a party from bringing a related claim in the future "even though the claim was not presented and might not have been presentable in the class action," but only where the released claim is "based on the identical factual predicate as that underlying the claims in the settled class action." *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992), *quoted in Howard*, 208 F.3d at 747. Thus, we have held that federal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006) (affirming dismissal of a class action against credit card companies predicated on the same price-fixing predicate and injury as claims settled in an earlier class action, even though the subsequent suit "posit[ed] a different theory of anti-competitive conduct"); *Class Plaintiffs*, 955 F.2d at 1286-91 (affirming approval of a settlement relating to certain bond defaults that released claims by an identical class of plaintiffs in a pending case that related to the same bond defaults).

We applied the same reasoning to hold that a state court's approval of a settlement agreement could release not only the state law fraudulent billing claims before it, but also federal RICO claims arising from the same billing practices. *Howard*,

208 F.3d at 746-48; *see also Epstein II*, 179 F.3d at 644-45 (discussing the Supreme Court's holding that members of a settlement class were bound by the Delaware Court of Chancery's release of federal claims) (citing *Matsushita*, 516 U.S. at 377, 379); *Class Plaintiffs*, 955 F.2d at 1288 (noting with approval that "other circuits have held that a state court was within its power to approve the release of a federal claim, which could not have been brought in the state court").

Because the *Benney* Settlement was approved by order of a Kansas state court, we apply Kansas law in determining its preclusive effect. *See Howard*, 208 F.3d at 748 ("The preclusive effect of a state court judgment in federal court is based on state preclusion law."). Kansas courts have not explicitly applied the identical factual predicate doctrine to determine the effect of releases of liability in court-approved settlement agreements, but claim preclusion doctrine in Kansas does not appear to us to be substantially different from the California and federal law applied in *Howard* and *Reyn's Pasta Bella*. In Kansas, "[a] voluntary dismissal of a case with prejudice, based on a settlement agreement that is approved by the court and journalized, is a final judgment on the merits." *Honeycutt v. City of Wichita*, 836 P.2d 1128, 1133 (Kan. 1992). Such a dismissal "is res judicata and bars a later lawsuit on the same transaction or occurrence." *Id.* at 1134; *see also Anderson v. Employers Mut. Cas. Ins. Co.*, 6 P.3d 918, 923-24 (Kan. Ct. App. 2000) (holding that a general release does not bar claims against tortfeasors who are not specifically named in the release). It appears to us that claim preclusion in Kansas is guided by the same general principles as in this circuit.

**[10]** Unlike the claims in *Reyn's Pasta Bella*, *Howard*, *Epstein II*, and *Class Plaintiffs*, which were held to have been validly released by earlier settlements of related claims, the Washington Plaintiffs' claims do not share an identical factual predicate with the claims resolved in the *Benney* Settlement. The claims underlying the *Benney* Settlement dealt exclusively with specific nationwide surcharges to recoup the costs

of compliance with federal programs, whereas the claims at issue in the present case involve Sprint's statewide surcharge to recoup the cost of the Washington B&O Tax allegedly in violation of a Washington statute. The superficial similarity between the two class actions is insufficient to justify the release of the later claims by the settlement of the former. Both involve claims that Sprint improperly billed government taxes or fees to its customers, but they deal with different surcharges, imposed to recoup different costs, that were alleged to be improper for different reasons.

[11] Especially relevant to our determination that the claims lack an identical factual predicate is our observation, noted above, that the *Benney* Class Plaintiff did not adequately represent the Washington Plaintiffs as to their B&O Tax Surcharge claims. The Kansas class action statute, like Federal Rule 23, requires that a class representative possess claims "typical of the claims . . . of the class" and that he "fairly and adequately protect the interests of the class." Kan. Stat. Ann. § 60-223(a)(3)-(4); Fed. R. Civ. P. 23(a)(3)-(4). Under Kansas law, a plaintiff "cannot represent a class in which she is not a member." *Chamberlain v. Farm Bureau Mut. Ins. Co.*, 137 P.3d 1081, 1088 (Kan. Ct. App. 2006). As a resident of Missouri, Benney's injury was not typical of the Washington Plaintiffs' injury, and, as a result, he failed to vigorously prosecute their claims or avoid the conflict between their legal interests. *See supra* at 3857-59. It seems to us unlikely that a plaintiff class's claims would ever be based on the identical factual predicate as the claims of a third party who did not adequately represent the class's interests. We conclude that the claims raised by the Washington Plaintiffs in this case are not derived from the same "transaction or occurrence" as the claims of the *Benney* Class Plaintiff, *Honeycutt*, 836 P.2d at 1134, and therefore were not released by the *Benney* Settlement.

## III.   Conclusion

[12] In light of the failure of the *Benney* Class Plaintiff to adequately represent the Washington Plaintiffs and the

absence of an identical factual predicate between their respective claims, the Kansas court's judgment approving the *Benney* Settlement cannot preclude the Washington Plaintiffs' unique causes of action, regardless of the expansive release contained in that judgment. On both grounds, therefore, we vacate the district court's order granting summary judgment.

Sprint raises other grounds for summary judgment that the district court did not have occasion to consider. We do not reach them now. On remand, the district court should address Sprint's alternate grounds for summary judgment.

**VACATED and REMANDED.**