Filed 10/28/21  Lincolnshire Police Pension Fund v. Jackson CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LINCOLNSHIRE POLICE PENSION FUND et al., <br><br> Plaintiffs and Appellants, <br> v. <br> JOSEPH L. JACKSON et al., <br><br> Defendants and Respondents. | A160763 <br><br> (San Mateo County <br> Super. Ct. No. 18CIV03264) |

Plaintiffs, two shareholders of WageWorks, Inc. (WageWorks), a Delaware corporation, brought a purported class action in San Mateo County Superior Court on behalf of themselves and other shareholders against defendants, certain WageWorks officers and directors.  Plaintiffs alleged defendants breached fiduciary duties by participating in a so-called "pump and dump" securities scheme whereby they disseminated false information about WageWorks to artificially boost the price of company stock, so that they could—and did—sell their personally-owned stock at the overvalued price. When the scheme was exposed, the company stock price collapsed and, in turn, WageWorks could not operate as a stand-alone company anymore, necessitating its merger with a third party.  In the operative amended complaint, plaintiffs alleged they, as distinct from the corporation, were damaged by defendants' breaches preceding the merger.

1

Defendants moved to dismiss the case on forum non conveniens grounds based on a WageWorks corporate bylaw selecting Delaware as the "sole and exclusive" forum for intra-corporate disputes. The trial court found the forum selection bylaw enforceable and dismissed plaintiffs' suit. Plaintiffs appealed.

While the appeal was pending, defendants moved to dismiss it as moot. They contend plaintiffs' suit is barred by a class settlement approved by a federal district court in August 2021, in a securities fraud action brought by WageWorks shareholders against certain officers and directors. Plaintiffs respond that the settlement did not release their claims here because they do not share an "identical factual predicate" with the claims in the securities action. We agree with defendants that the securities action settlement precludes plaintiffs' present claims and therefore renders moot the issues on appeal. Accordingly, we will dismiss the appeal.

## BACKGROUND

**The Securities Action**

In May 2019, a class of investors who purchased stock in WageWorks, a publicly traded Delaware corporation headquartered in San Mateo, filed in federal district court its consolidated amended class action complaint against certain WageWorks officers, directors, and underwriters, including the company's CEO, Joseph Jackson. (*In re WageWorks, Inc. Securities Litigation* (N.D.Cal. 2019, No. 4:18-CV-01523-JSW) (usually referred to as the securities action).)[1] The securities action complaint alleged violations of the Securities

---

[1] Information on the securities action comes to us from defendants' request that we take judicial notice of (1) the consolidated amended class action complaint, referred to usually as the securities action complaint; (2) the settlement agreement; and (3) judgment. We grant the unopposed request. (Evid. Code, §§ 452, subd. (d), 459.)

2

Act of 1933 and the 1934 Exchange Act resulting from what is known as a "pump and dump" scheme that occurred between May 5, 2016 and March 1, 2018.  In this scheme, certain corporate officers and directors spread false or misleading information about WageWorks's financial condition in order to inflate ("pump up") the price of a stock.  Then, after pumping the stock and creating a buying frenzy, the defendants sold ("dumped") their own shares to unsuspecting customers at the artificially inflated price.  (See generally *United States v. Zolp* (9th Cir. 2007) 479 F.3d 715, 717, fn. 1 [describing a "pump and dump" scheme]; *United States v. Skelly* (2d Cir. 2006) 442 F.3d 94, 96–97 [same].)

Counts I and II of the complaint alleged fraud pursuant to sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and regulation 10b-5 promulgated thereunder on behalf of a class of investors who purchased stock between May 6, 2016 and March 6, 2018, the class period ("1934 Act Class").[2]

Counts III through V alleged violations of sections 11, 12(a)(2), and 15 of the Securities Act of 1933 on behalf of a class of investors who acquired

---

[2] Title 15 of the United States Code section 78j(b), makes it unlawful "for any person . . . [¶] . . . [¶] [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe . . . ."  Rule 10b–5 (17 C.F.R. § 240.10b-5) promulgated under the authority of section 10(b), in turn, provides:  "It shall be unlawful for any person . . . [¶] (a) To employ any device, scheme, or artifice to defraud, [¶] (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or [¶] (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."  Section 20(a) imposes liability on any person directly or indirectly controlling any person liable under those acts, to the same extent as the controlled person.  (15 U.S.C. § 78t(a).)

3

stock pursuant or traceable to WageWorks's registration statement issued in connection with its June 2017 offering and allegedly contained false or misleading representations ("1933 Act Class").[3]

**The Present Action and the Proceedings Underlying the Appeal**

On June 22, 2018, Lincolnshire Police Pension Fund (Lincolnshire) filed a shareholder derivative suit in the San Mateo County Superior Court against WageWorks officers or directors Joseph L. Jackson, John W. Larson, Jerome D. Gramaglia, Edgar O. Montes, Bruce G. Bodaken, and Edward C. Nafus (collectively, defendants). (Lead case No. 18CIV03264). On September 6, 2018, Sheet Metal Workers Local No. 33, Cleveland District, Pension Fund (Sheet Metal Workers) separately filed a derivative suit against defendants (case No. 18CIV04787). The actions were consolidated. We usually refer to Lincolnshire and Sheet Metal Workers collectively as plaintiffs.

On May 2, 2019, plaintiffs filed their consolidated complaint (original complaint), asserting mainly derivative claims on behalf of WageWorks and against defendants for breach of fiduciary duty, corporate waste, and unjust enrichment. The original complaint alleged that defendants engaged in the

---

[3] Title 15 of the United States Code section 77k(a), creates a private remedy for any purchaser of a security if "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." Section 12(a)(2) imposes civil liability on any person for use of any instrumentality of interstate commerce to offer or sell securities by means of a prospectus or oral communication that includes "an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . ." (15 U.S.C. § 77*l*(a)(2).) Section 15(a) provides that persons in a control relationship with persons liable under section 11 or 12, will be liable if the controlling person had knowledge or reason to believe in the existence of the facts constituting the violation. (15 U.S.C. § 77k(o).)

same pump and dump scheme that was alleged in the securities action. WageWorks later learned that it would have to restate its financial results and financial statements for 2016 and 2017, and that such information should no longer be relied upon. As details became public, the trading price of WageWorks stock collapsed and "[o]ver $1.37 billion in once valuable shareholders' equity vanished into thin air."

Plaintiffs alleged that defendants, by participating in such a scheme, breached fiduciary duties they owed to WageWorks. Plaintiffs further asserted WageWorks was "severely damaged," as evidenced by the fact that it is a defendant in another lawsuit for alleged violations of the federal securities laws and the subject of investigations conducted by the Securities Exchange Commission and the United States Department of Justice.

On June 26, 2019, WageWorks entered into a merger agreement with HealthEquity, Inc., an unaffiliated third party. Because under Delaware law, a plaintiff who loses stock in a corporation as a result of a merger loses standing to pursue a derivative action, the merger terminated plaintiffs' standing to maintain their derivative claims. (*Lewis v. Anderson* (Del. 1983) 477 A.2d 1040, 1049.)

On that same day, WageWorks's board of directors approved amendments to the company's bylaws. The board added a bylaw entitled "Article XI — Forum for Certain Litigation," which provides in part: "[T]he Court of Chancery of the State of Delaware . . . shall, to the fullest extent permitted by law, be the sole and exclusive forum for . . . (ii) any action asserting a claim of breach of a fiduciary duty owed by a current or former director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholders . . . , or (iv) any action asserting a claim governed by the internal affairs doctrine . . . ."

On October 28, 2019, plaintiffs filed the amended complaint (amended complaint) on behalf of themselves and a class of former WageWorks shareholders, asserting a single cause of action against defendants for "inseparable fraud," a form of a breach of fiduciary duty claim recognized under Delaware law.  Inseparable fraud is based on the theory that where a merger was necessitated by, and is inseparable from, the alleged fraud, the merger does not absolve the fiduciaries from accountability for the fraudulent conduct.  And so, while a merger extinguishes the standing of a shareholder of the merged corporation to maintain a derivative action, the shareholder still has a direct claim that survives the merger.  (See *Arkansas Teacher Retirement System v. Countrywide Financial Corp.* (Del. 2013) 75 A.3d 888, 896.)

Although plaintiffs did not allege that the merger itself was unlawful, they claimed that defendants' pre-merger pump and dump scheme ultimately "impair[ed] WageWorks's ability to continue on as a standalone enterprise" and "ma[de] the sale of the remaining wreckage to a third party inevitable." Plaintiffs requested monetary damages, an order for accounting, and punitive damages.

Defendants then moved to dismiss or stay the suit on the grounds of forum non conveniens.  After multiple rounds of briefing and three arguments, the trial court granted the motion by order on June 24, 2020. The court analyzed whether the forum selection bylaw applied based on the doctrine of "relation back," which "is generally applied to determine whether an amended pleading filed beyond the statute of limitations should be deemed filed at the time of an earlier pleading which met the applicable limitations period." (Citing *Quiroz v. Seventh Ave. Center* (2006) 140 Cal.App.4th 1256, 1278–1279.)  The court found the amended complaint

6

did not relate back to the filing of the original complaint, because the original complaint asserted derivative claims on behalf of the corporation, whereas the amended complaint asserted direct claims on behalf of the individual shareholders. Ultimately, the court concluded "the Amended Complaint constitutes a new action that post-dates the adoption of WageWorks' forum selection bylaw" and accordingly dismissed plaintiffs' suit without prejudice.

Plaintiffs appealed.

**The Securities Action Settlement**

On April 1, 2021, while this appeal was pending, the parties in the securities action came to a settlement agreement. And on August 20, the federal district court approved the settlement and entered judgment.

As relevant here, the settlement agreement defined "Released Claims" as "any and all claims . . . that Lead Plaintiffs or any other Settlement Class Member (i) asserted in this Action or (ii) could have asserted in the Action or any other action or in any forum, that arise out of, relate to, or are in any way connected with or to the claims, allegations, transactions, facts, events, acts, disclosures, statements, representations or omissions or failures to act, involved, set forth or referred to in the complaints filed in this Action and that relate to the purchase or acquisition of WageWorks's publicly traded common stock on the open market during the Class Period. . . ."

The district court ordered: "Upon the Effective Date, Lead Plaintiffs and each and every Settlement Class Member . . . shall: (i) be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Released Claims, as against each and every one of the Defendants Parties; (ii) be barred and enjoined from commencing, instituting, prosecuting or maintaining any of the Released Claims against any of the Released Defendant Parties . . . ."

7

Plaintiffs do not deny that they were included in the settlement and that they did not object to or opt out of it, as confirmed by counsel during oral argument.

**The Motion to Dismiss This Appeal**

On September 3, defendants filed in this court a motion to dismiss the appeal on the ground that the settlement agreement in the securities action released plaintiffs' claims in this action, thereby rendering the appeal moot.

Plaintiffs filed an opposition, arguing that under Ninth Circuit law, their inseparable fraud claims were not released under the settlement agreement because the claims do not share an "identical factual predicate" as the claims in the securities action. Alternatively, plaintiffs invoked the "primary rights" doctrine applied under California law in the res judicata context to argue their claims are not precluded by the settlement. Plaintiffs asserted that in any event, the motion to dismiss is "premature" and suggested they should be permitted to conduct discovery concerning the "drafting history" of the settlement agreement."

On September 24, defendants filed a "Memorandum of Points and Authorities in Further Support of Motion to Dismiss Appeal as Moot" replying to plaintiffs' opposition.

Plaintiffs subsequently filed a motion to strike the defendants' September 24 memorandum on the ground that the California Rules of Court do not expressly authorize the filing of a reply in support of a motion. In the alternative, plaintiffs requested leave to file a sur-reply, a proposed version of which they attached to their motion. Defendants filed a response, arguing their memorandum was procedurally proper and, in any event, the proposed sur-reply supports, rather than undermines, dismissal of the appeal.

8

Plaintiffs also requested the opportunity to present oral arguments on the motion to dismiss. We granted the request.

## DISCUSSION

### Plaintiffs' Motion to Strike

Before we turn to the merits of the motion to dismiss the appeal, we address plaintiffs' motion to strike defendants' memorandum of points and authorities filed in further support of their motion to dismiss. Plaintiffs correctly note that Rule 8.54 of the California Rules of Court does not expressly authorize the filing of a reply to an opposition to a motion in the appellate court. But it does not prohibit it either. (Cal. Rules of Court, rule 8.54.) Furthermore, the "Practices and Procedures" provided on this court's website indicate that parties may file a reply to an opposition within five days of the filing of the opposition. We thus deny plaintiffs' motion to strike, but grant their request for leave to file their proposed sur-reply. Accordingly, we will consider all of the papers filed by the parties in connection with the motion to dismiss.

### The Mootness Doctrine

Turning to the merits, the sole question we must answer is whether the settlement in the securities action moots this appeal. We conclude it does.

As we explained in *Sturgell v. Department of Fish & Wildlife* (2019) 43 Cal.App.5th 35, 43: "An appeal is moot when there is no actual controversy upon which a judgment could operate. (*Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129, 132.) ' "The pivotal question in determining if a case is moot . . . is whether the court can grant . . . any effectual relief." ' (*Panoche Energy Center, LLC v. Pacific Gas & Electric Co.* (2016) 1 Cal.App.5th 68, 96; see *Woodward Park Homeowners Assn. v. Garreks, Inc.* (2000) 77 Cal.App.4th 880, 888 [judicial ruling 'can have no practical impact or provide the parties

9

effectual relief"].) [¶] . . . . 'In general, it is a court's duty to decide " ' "actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (*Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 541.) "[T]he critical factor in considering whether [an] appeal is moot is whether the appellate court can provide any effective relief if it finds reversible error." (*In re N.S.* (2016) 245 Cal.App.4th 53, 60.)' "

One event that commonly results in mootness is "when the underlying claim is settled or compromised." (*Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1180; see, e.g., *Muccianti v. Willow Creek Care Center* (2003) 108 Cal.App.4th 13, 23–24 [dismissing appeal from judgment in state court action as moot where parties settled claims in bankruptcy court pending appeal].) "When a case has settled, dismissal of the appeal is the appropriate disposition because 'settlement operates as a merger and [bar] as to all preexisting claims and those alleged in the lawsuit that have been resolved.' " (*Larner v. Los Angeles Doctors Hospital Associates, LP* (2008) 168 Cal.App.4th 1291, 1296, citing *Ebensteiner Co., Inc.*, at p. 1179.)

**The Securities Action Settlement Precludes Plaintiffs' Claims**

The mootness issue hinges on whether the securities action settlement released plaintiffs' claims in this action.

At the threshold, we must determine the applicable law for analyzing the release. Plaintiffs argue, "[b]ecause Defendants are relying on a federal judgment and release, California law requires that this Court apply federal standards," as articulated in *Hesse v. Sprint Corp.* (9th Cir. 2010) 598 F.3d 581 (*Hesse*), which limits the enforceability of releases. Plaintiffs assert, in any event, California courts have applied comparable principles.

10

We find that the relevant California and Ninth Circuit laws are reconcilable, and both apply to our analysis in this case. (See *Stonehocker v. Kindred Healthcare Operating, LLC* (N.D.Cal. 2019, No. 19-cv-02494-YGR) 2019 WL 4542466 at *7 & fn. 17; *Prieto v. U.S. Bank National Assn.* (E.D.Cal. Sept. 30, 2012, No. CIV S-09-901 KJM EFB) 2012 WL 4510933 at *6.) California law governs the interpretation of the contract. (See *Navarro v. Mukasey* (9th Cir. 2008) 518 F.3d 729, 733 [federal law provides that contract interpretation is ordinarily a question of state law].) Federal law governs the preclusive effect of a federal court judgment. (*Taylor v. Sturgell* (2008) 553 U.S. 880, 891; *Guerrero v. Dept. of Corrections & Rehabilitation* (2018) 28 Cal.App.5th 1091, 1101–1102.)

Under California law, a contract must be interpreted so as to give effect to the mutual intention of the parties. (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 525 (*Lockyer*).) " 'In interpreting an unambiguous contractual provision we are bound to give effect to the plain and ordinary meaning of the language used by the parties.' [Citation.] Thus, where ' "contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further." ' " (*Id.* at p. 524.)

Further, under California law, releases that purport to cover all claims that were or could have been raised in an action "must be given comprehensive scope." (*Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 589.) " 'The rule for releases is that absent special vitiating circumstances, a general release bars claims based upon events occurring prior to the date of the release.' " (*Ibid.*, quoting *Johnson, Drake & Piper, Inc. v. United States* (1976) 531 F.2d 1037, 1047.)

11

Even when applying California law to interpret the settlement agreement, however, Ninth Circuit law has cautioned that while a defendant "may have drafted the settlement agreement to include as broad a release as possible, the release would have only been *enforceable* as to subsequent 'claims relying upon a legal theory different from that relied upon in the class action complaint, but defending upon the same set of facts." (*Williams v. Boeing Co.* (9th Cir. 2008) 517 F.3d 1120, 1133.) Thus, "a settlement agreement may preclude a party from bringing a related claim in the future 'even though the claim was not presented and might not have been presentable in the class action,' but only where the released claim is 'based on the identical factual predicate as that underlying the claims in the settled class action.'" (*Hesse, supra,* 598 F.3d at p. 590.)

"Courts have generally interpreted that requirement to coincide with the general res judicata test of whether claims share a 'common nucleus of operative fact.'" (*Kazi v. PNC Bank, N.A.* (N.D.Cal. Mar. 15, 2021, No. 18-cv-04810-JCS) 2021 WL 965372 at *15, citing *Class Plaintiffs v. Seattle* (9th Cir. 1992) 955 F.2d 1268, 1288 (*Class Plaintiffs*) [affirming approval of a settlement including a release where the claims in the two cases at issue "arise from the same common nucleus of operative fact"]; *Belew v. Brink's, Inc.* (9th Cir. 2018) 721 Fed.Appx. 734, 735 [citing *Class Plaintiffs* to apply the "common nucleus" test to evaluate a release in a class settlement]; Rubenstein, Newberg on Class Actions (5th ed. 2021) § 18:19 (Newberg) ["In giving meaning to what constitutes an 'identical factual predicate,' courts have generally fallen back on the broad conclusion that the test requires only 'a common nucleus of operative fact,' and hence have equated the test with the normal transactional test underlying the scope of claim preclusion itself"]; cf., *Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.* (2020) ___ U.S.

\_\_\_, 140 S.Ct. 1589, 1595 [explaining that the general test for res judicata turns on the "common nucleus" standard].)[4]

Accordingly, the settlement agreement must be interpreted under California law to effectuate the intent of the parties, while applying Ninth Circuit law regarding limitations on enforceability of releases. (*Stonehocker v. Kindred Healthcare Operating, LLC, supra,* 2019 WL 4542466 at \*7; *Prieto v. U.S. Bank National Assn., supra,* 2012 WL 4510933 at \*6.)

The interpretation of a contract is subject to de novo review where, as here, the interpretation does not turn on the credibility of extrinsic evidence. (*Lockyer, supra,* 107 Cal.App.4th at p. 520). The same is true as to our determination of whether the securities action and this action share an identical factual predicate: it is a purely legal question because we need not look beyond the complaints in each action. (See *In re Western States Wholesale Natural Gas Antitrust Litigation* (9th Cir. 2018) 725 Fed.Appx. 560, 564.)

### *The Scope of the Release*

In interpreting the settlement agreement, we first examine its language. Paragraph 1.3 states: " 'Released Claims' shall collectively mean

---

[4] Although the identical factual predicate test has been interpreted as coextensive with the "common nucleus" standard for res judicata, "the defenses [of res judicata and release] are separate and distinct." (*Nottingham Partners v. Trans–Lux Corp.* (1st Cir. 1991) 925 F.2d 29, 31.) As explained in *Prieto v. U.S. Bank National Assn., supra,* 2012 WL 4510933, a suit can be barred by the earlier settlement of another suit in either of two ways: res judicata or release. (*Id.* at \*1, quoting *Nottingham Partners,* at p. 31.) The motion to dismiss relies on the defense of release. Thus, we do not analyze whether plaintiffs' claims are precluded under the res judicata doctrine. Accordingly, we need not consider plaintiffs' arguments under the "primary rights" theory applicable in the res judicata context under California law— which, as explained, does not govern the preclusive effect of a federal court judgment.

13

any and all claims . . . , rights, causes of action . . . , suits, . . . of every nature and description, . . . whether arising under federal, state . . . law . . . , whether direct, representative, class or individual in nature, . . . that Lead Plaintiffs or any other Settlement Class Member (i) asserted in this Action or (ii) could have asserted in the Action or any other action or in any forum, that arise out of, relate to, or are in any way connected with or to the claims, allegations, transactions, facts, events, acts, disclosures, statements, representations or omissions or failures to act, involved, set forth or referred to in the complaints filed in this Action and that relate to the purchase or acquisition of WageWorks's publicly traded common stock on the open market during the Class Period. . . ."

" 'Settlement Class' means the 1933 Act Class and the 1934 Act Class, as defined above." Pertinent here is the " '1934 Act Class,' " which "means all persons and entities who purchased or otherwise acquired WageWorks' publicly traded common stock on the open market between May 6, 2016 and March 1, 2018, inclusive, and were damaged thereby . . . ."

Defendants argue "[p]laintiffs' inseparable fraud claim is a Released Claim squarely within the scope of the . . . release clause." Plaintiffs do not offer any arguments whether the release contractually bars the present action; instead, they simply respond that defendants "rely upon contorting generic release language." We agree with defendants that the release plainly encompasses the claims asserted in this action.

First, the inseparable fraud cause of action alleged in the amended complaint "relate[s] to" and "[is] in any way connected with or to the claims, allegations, transactions, facts, events, acts, disclosures, statements, representations or omissions or failures to act" in the securities action complaint. It is undisputed that both complaints allege that WageWorks

14

officers and directors engaged in a fraudulent scheme whereby they disseminated false or misleading information about the company to increase its stock price and artificially boost the price of company stock, before selling their own WageWorks stock at the artificially high prices.

Second, the inseparable fraud claim "relate[s] to the purchase or acquisition of WageWorks's publicly traded common stock on the open market during the Class Period." The amended complaint alleges plaintiffs each purchased stock sometime between May 5, 2016 and March 1, 2018, a class period that begins one day earlier than, but ends on the same day as, the class period in the securities class action. Notwithstanding, the class periods are effectively the same, given that both actions apparently base the class periods on when the first alleged misrepresentation took place: the amended complaint notes it occurred on May 5 generally, while the securities complaint specifies it occurred "after the close of the market" on May 5.

However, in a footnote in their opposition to the motion to dismiss, plaintiffs suggest that Sheet Metal Workers does not fall within the scope of the quoted release provision. Plaintiffs state that in the original complaint, Sheet Metal Workers alleged it had purchased and held WageWorks shares since June 1, 2014, before the class period, and that "plaintiffs could easily amend the operative complaint to re-instate those allegations." Plaintiffs' argument is not well taken. It is well settled that "[a]n amended complaint 'supersedes the original and furnishes the sole basis for the cause of action. [Citations.] The original complaint is dropped out of the case and ceases to have any effect as a pleading, or as a basis for a judgment.'" (*Anmaco, Inc. v. Bohlken* (1993) 13 Cal.App.4th 891, 901.) "[O]rdinarily, appellate courts will not consider the allegations of a superseded complaint . . . ." (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 209,

15

superseded by statute on another ground, as stated in *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 227; *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 884 [" 'Such amended pleading supplants all prior complaints. It alone will be considered by the reviewing court' "]; see also *Penziner v. West American Finance Co.* (1933) 133 Cal.App. 578, 582 ["Reference cannot be made to superseded complaints to explain, vary, contradict, weaken or strengthen the allegations of the last complaint"].) We therefore confine our attention to the most recently filed amended complaint, which, as explained, alleges that plaintiffs purchased WageWorks stock during the securities action class period.

Third, the inseparable fraud claim "could have been"—and indeed, was—raised prior to the execution of the settlement agreement. (Cf. *Villacres v. ABM Industries Inc.*, *supra*, 189 Cal.App.4th at p. 588 [general language such as the phrase " ' "any and all claims that were or could have been asserted by [the plaintiff] in the [present lawsuit]" ' " " 'have consistently been held by the courts to constitute a waiver of . . . all "claims based upon events occurring prior to the date of the release" ' "].)

In sum, we conclude that settlement agreement plainly and unambiguously released plaintiffs' claims alleged in the amended complaint.

Plaintiffs do not dispute that their claims were contractually released but nonetheless suggest they should be permitted to conduct discovery on the drafting history of the settlement agreement to determine whether it "was intended by the parties to the securities-action settlement to cover the instant action." We disagree. For one, plaintiffs do not deny that they received advance notice of the settlement agreement and that they did not object to any of its terms. Thus, they cannot now reasonably complain that the release "is highly suspicious" and warrants discovery. Furthermore, as

16

plaintiffs acknowledge, extrinsic evidence relevant to show whether a contract is reasonably susceptible of a particular meaning may be received when the words used in the contract are ambiguous. (*Wolf v. Superior Court* (2004) 114 Cal.App.4th 1343, 1351.) As explained, plaintiffs do not offer any contractual interpretation of the settlement agreement—much less explain why the terms are ambiguous. In any event, we have concluded that the terms are unambiguous, rendering any extrinsic evidence unnecessary.

### *The Identical Factual Predicate Test*

We next determine whether the release precludes plaintiffs' claims in this action based on the "identical factual predicate" test. Under this test, the released claims must "arise from the same common nucleus of operative fact" as those alleged in the securities action complaint. (*Class Plaintiffs*, *supra*, 955 F.2d at p. 1288.) The Ninth Circuit "use[s] a 'transaction test to determine whether . . . two suits share a common nucleus of operative fact.' [Citations.] 'Whether two events are part of the same transaction or series depends on whether they are related to the same set of facts and whether they could conveniently be tried together.' [Citations.]" (*Media Rights Techs., Inc. v. Microsoft Corp.* (9th Cir. 2019) 922 F.3d 1014, 1026–1027.) " 'What factual grouping constitutes a "transaction," and what groupings constitute a "series," are to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " (*Id.* at p. 1027, quoting Rest.2d Judgments (1982) § 24.)

The identical factual predicate test is met here. The securities action and this action share a common nucleus of operative fact: damages caused by

officers and directors artificially inflating WageWorks's stock price by misrepresenting the company's finances and selling the overpriced shares. In fact, the securities action complaint and the amended complaint allege the same timeline of this "pump and dump" scheme that took place between May 5, 2016 and March 1, 2018. Both complaints detail many of the same allegedly fraudulent statements that were made in each fiscal quarter during the class period; the values of the company stock price throughout the scheme; the exposure of the fraud and revelations of WageWorks's true economic condition; and the ultimate collapse of the stock price. Indeed, many of the allegations in both complaints are identical. Thus, we conclude the claims in the amended complaint are " 'based on the identical factual predicate as that underlying the claims in the settled class action . . . .' " (*Class Plaintiffs*, *supra*, 955 F.2d at p. 1287.)

Plaintiffs fail to distinguish the factual predicate of their present claims from that of the securities action. They argue "[t]he Amended Complaint embraces the damage done to all holders of WageWorks's common stock—not merely the harm to class-period purchasers as in the federal case—due to the diminution of Company's value caused by Defendants' violations of fiduciary duty and . . . self-dealing (neither diminution of value suffered by holders not self-dealing are a basis for liability in the securities action). . . . The Amended Complaint thus seeks to remedy the damage done to WageWorks's corporate franchise . . . , which is not the subject matter of the federal case." (Italics omitted.)

Rather than analyze whether their present claims " 'are related to the same set of facts [as the securities action] and whether they could conveniently be tried together' " (*Media Rights Techs., Inc. v. Microsoft Corp.*, *supra*, 922 F.3d at pp. 1026–1027), plaintiffs instead focus on the differences

18

in the claims presented and remedies sought in each action. But as explained in *Class Plaintiffs*, *supra*, 955 F.2d 1268, "[t]he weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the identical factual predicate as that underlying the claims in the settled class action *even though the claim was not presented and might not have been presentable in the class action.*' " (*Id.* at p. 1287, italics added, quoting *TBK Partners, Ltd. v. Western Union Corp.* (2d Cir. 1982) 675 F.2d 456, 460 (*TBK Partners*).) To this end, the identical factual predicate test is aimed at "further[ing] the goal[] of finality by ensuring that claims similar to those at the heart of the class suit are not re-litigated." (Newberg, *supra*, § 18:19, citing *TBK Partners, supra,* 675 F.2d at p. 461.)

*Howard v. America Online, Inc.* (9th Cir. 2000) 208 F.3d 741 is instructive. There, a settlement in a previous state court class action brought by AOL subscribers unequivocally barred claims that "arise out of or are related to the matters referred to" in the state court complaint. (*Id.* at p. 747.) Specifically, the plaintiffs' RICO claims cited the identical unfair billing allegations that the state plaintiffs had alleged in their complaint. The Ninth Circuit ruled that the plaintiffs in *Howard* fell within the class that settled the state lawsuit and held that they could not use those allegations as predicate acts. (*Ibid.*; see also *Reyn's Pasta Bella, LLC v. Visa USA, Inc.* (9th Cir. 2006) 442 F.3d 741, 749 [affirming dismissal of a class action against credit card companies based on the same price-fixing predicate and injury as claims settled in an earlier class action, even though the subsequent suit "posit[ed] a different theory of anti-competitive conduct"]; *Trabakoolas v. Watts Water Techs., Inc.* (N.D.Cal. Aug. 27, 2021, No. 12-cv-01172-WHO) 2021 WL 3848044 at *8 [affirming dismissal of class action predicated on same alleged product defect as alleged in an earlier class action

19

"even though [the subsequent action's] "claims for strict liability and breach of warranty were not directly presented in the [earlier] class action]".)

Likewise, here, even though the inseparable fraud cause of action was not presented in the securities action, it relies on precisely the same pump and dump scheme alleged in the securities action. Thus, whether liability arises from a breach of a fiduciary duty or a violation of the securities fraud laws, the facts to support each claim are the same.

Moreover, we are unpersuaded by plaintiffs' assertion that the two actions do not share an identical factual predicate because this action may include a broader class of WageWorks investors than the securities action. First, as defendants note, the putative class in this action has not been certified. Second, the motion to dismiss is directed only at the appeal of the named plaintiffs. In any event, plaintiffs' arguments lack merit.

As alleged in the amended complaint, the putative class consists of "former shareholders in WageWorks," which plaintiffs explain includes already existing "holders" of stock, and not merely individuals who purchased stock during the class period. However, plaintiffs' reliance on perceived differences between the injuries suffered by holders as opposed to purchasers of stock is unavailing.[5] Even if the amended complaint asserts claims on

---

[5] Some of the distinctions that plaintiffs draw are questionable. For example, they assert that "the securities action by definition cannot remedy the harm done to all *holders* of WageWorks's common stock" because "the private right of action under the federal securities-fraud laws is limited to purchasers and sellers of securities," citing *Blue Chip Stamps v. Manor Drug Stores* (1975) 421 U.S. 723. But recent United States Supreme Court cases have rejected *Blue Chip Stamps's* view and held that standing under section 10(b) of the 1934 Act and Rule 10b-5 should be broadly construed to include holders of securities, in addition to actual purchasers or sellers. (See *Merrill Lynch, Piece, Fenner & Smith, Inc. v. Dabit* (2006) 547 U.S. 71, 80, 84, 89.) In any event, because the parties have not addressed in detail whether

20

behalf of individuals who held stock, plaintiffs do not dispute that it also covers claims of individuals who purchased stock during the securities action class period—as reflected by plaintiffs' repeated assertions that the amended complaint seeks to compensate WageWorks's shareholders and "not *merely* class-period purchasers." And, as explained above, plaintiffs do not dispute they have alleged in the amended complaint that they are "class-period purchasers" and, therefore, that they are members of the released class in the securities action settlement. Indeed, plaintiffs do not deny they never objected to or opted out of the settlement. Instead, they remained silent, stayed in the class, and accepted the benefits of the settlement.

For all of these reasons, we hold that the securities action and this action, both of which arise out of a fraudulent scheme to artificially inflate stock prices, share an identical factual predicate. Accordingly, plaintiffs' claims in the amended complaint were released by the settlement agreement after they failed to opt out.

In sum and in short, we conclude plaintiffs' appeal is moot because we no longer are able to grant them any effective relief on appeal.

## DISPOSITION

The appeal is dismissed as moot. Defendants shall recover their costs on appeal.

---

"holders"—those who purchased stock outside of the class period and do not describe plaintiffs here—have been released by the settlement agreement, we do not resolve that question.

_____

Richman, J.

We concur:

_____

Kline, P.J.

_____

Stewart, J.

*Lincolnshire Police Pension Fund et al. v. Jackson et al.* (A160763)